MUNICIPAL UTILITIES BOARD OF ALBERTVILLE; The City of Alexander City; The City of Andalusia; The City of Bessemer; The City of Courtland; The Utilities Board of the City of Cullman, Inc.; The City of Decatur; The City of Dothan; The City of Evergreen; The City of Fairhope; The City of Florence; The Utilities Board of the City of Foley; The Fort Payne Improvement Authority; The Electric Board of the City of Hartselle; The City of Huntsville; The City of Lafayette; The City of Lanett; The Electric Board of the City of Luverne; The Electric Board of the City of Muscle Shoals; The City of Opelika; The Utilities Board of the City of Opp; The City of Piedmont; The City of Robertsdale; The Scottsboro Electric Power Board; The Utilities Board of the City of Sylacauga; The City of Tuscumbia; and The Utilities Board of the City of Tuskegee, Plaintiffs–Appellants,

v.

ALABAMA POWER COMPANY; The Alabama Rural Electric Association of Cooperatives; Dixie Electric Cooperative; Covington Electric Cooperative, Inc.; Marshall–Dekalb Electric Cooperative; Southern Pine Electric Cooperative; Cherokee Electric Cooperative; Cullman Electric Cooperative; Pioneer Electric Cooperative, Inc.; Tombigbee Electric Cooperative, Inc.; Wiregrass Electric Cooperative, Inc.; Joe Wheeler Electric Membership Corporation; Clarke–Washington Electric Membership Corporation; Tallapoosa River Electric Cooperative; Pea River Electric Cooperative; Central Alabama Electric Cooperative; Sand Mountain Electric Cooperative; Franklin Electric Cooperative; North Alabama Electric Cooperative; Baldwin County Electric Membership Cooperative; Coosa Valley Electric Cooperative; South Alabama Electric Cooperative, Inc.; Black Warrior Electric Membership Corporation and Arab Electric Cooperative, Inc.; Alabama Electric Cooperative, Inc., Defendants–Appellees.

No. 92–6268.

United States Court of Appeals, Eleventh Circuit.

May 23, 1994.

385

Robert D. Thorington, Wendell Cauley, Thorington & Gregory, Montgomery, AL, for appellants.

Robert A. Jablon, Spiegel & McDiarmid, Washington, DC, for Municipal Utilities, et al.

Charles M. Crook, Balch & Bingham, Robert A. Huffaker, Rushton, Stakely, Johnston & Garrett, Montgomery, AL, for Alabama Power Co.

H.A. Lloyd, Lloyd, Dinning, Boggs & Dinning, Demopolis, AL, John Frederick Mandt, David L. Denson, Balch & Bingham, Birmingham, AL, for Black Warrior Elect. Membership.

Before TJOFLAT, Chief Judge, KRAVITCH Circuit Judge, and RONEY, Senior Circuit Judge.

PER CURIAM:

## I.

This is an antitrust action brought by thirty Alabama municipalities (the "Cities") against the Alabama Power Company and twenty-two rural electric cooperatives,[1] all of whom are suppliers of electricity in the retail electric market. The Cities claim that two Alabama statutes, 1984 Ala. Acts 206 (the "1984 Act"), codified as Ala.Code §§ 37–14–1 to –17 (Michie 1992), and 1985 Ala. Acts 645 (the "1985 Act"), codified as Ala.Code §§ 37–14–30 to –40 (Michie 1992) (collectively, "the Acts"), run afoul of the Sherman Act, 15 U.S.C. §§ 1, 2 (1988), because the statutes incorporate fifteen agreements between two suppliers of electricity (of which one or both are defendants in this litigation) that allocate service territories and, thus, eliminate competition among such suppliers in those areas.

In an earlier proceeding, we agreed with the district court that the state action immunity doctrine of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), as applied in *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), controlled the disposition of this case. *Municipal Util. Bd. of Albertville v. Alabama*

---

1. The Cities also sued the cooperatives' association, the Alabama Rural Electric Association of Cooperatives. For convenience, we refer only to the defendants named in the text.

*Power Co.,* 934 F.2d 1493, 1501–02 (11th Cir. 1991). As a result, we examined the legislation to determine whether, as the district court held, *Midcal*'s two-part test barred the Cities' claims for relief. *Id.* at 1502–05.

The first part of *Midcal*'s test asks whether the challenged legislative enactment implements a clearly articulated state policy to restrain competition; the second part asks whether the state has actively supervised the anticompetitive conduct. *Midcal,* 445 U.S. at 105, 100 S.Ct. at 943. We concluded that the Acts challenged here satisfied the first prong of the *Midcal* test because "[t]he Alabama legislature has clearly articulated a policy to displace competition in the retail electric market" in order "to prevent duplication of electric facilities." *Municipal,* 934 F.2d at 1502. We were unable to determine, however, whether the second part of the *Midcal* test was satisfied because the private agreements, which the Acts incorporated, were not in the record. For this reason, we could not tell whether these agreements authorized the parties, in implementing them, to engage in anticompetitive conduct that would not require the state's prior approval. We therefore remanded the case to the district court for a resolution of this issue. We told the court that, if the implementation of the incorporated agreements satisfied the second *Midcal* requirement, dismissal of the suit would be proper. *Id.* at 1504–05.

On remand, the district court examined the agreements in question, concluded that the requisite state supervision of the implementation of the agreements was present, and dismissed the case. The Cities now appeal, challenging this conclusion. We affirm.

## II.

Only three of the agreements the Acts incorporate are involved in this appeal. These agreements authorize the parties, by mutual consent, to assign new customers between themselves. The first is the Agreement between Tarrant City, Alabama, and the Alabama Power Company dated June 8, 1983, which assigned all new customers having an initial contract demand of less than 5,000 kilowatts to the city:

[P]rovided, however, if [Tarrant] City and [the Alabama Power] Company mutually agree, upon request for such agreement by the customer, that service by Company could be provided in a manner which minimizes the potential for duplication of electric facilities, then service to such customer shall be provided by the Company.

The second is the Agreement between the Southern Pine Electric Cooperative, Inc., and the City of Evergreen, Alabama, which assigned to Southern Pine all existing customers, and all new customers locating within 300 feet of Southern Pine's then existing electrical lines, within an area then proposed to be annexed by the City:

[P]rovided, however, that any new industry which might locate in these areas shall be negotiated as to who will serve the industry by the Governing Bodies of the City of Evergreen and Southern Pine Electric Coop.

The third is the Agreement between the Utilities Board of the City of Cullman and the Cullman Electric Cooperative dated November 5, 1954, which, in relevant part, established a boundary separating the service areas of the Utilities Board and the Cooperative and provided that, if either party refused to make service available to prospective customers in its service area, the other party might, after submission to it by the prospective customer of proof of the refusal, and after giving six months' notice, commence serving the customer.

Standing alone, the provisions we have quoted appear to give the parties the right to allocate new customers without the Legislature's approval. These provisions, however, do not stand alone, as the district court concluded; they must be read *in pari materia* with the incorporating provision of the 1985 Act, section 37–14–36. That section states:

The separate agreements listed below which have heretofore been entered into between, or negotiated between retail electric suppliers, have been reviewed by the legislature, determined to be in the public interest and found not to be inconsistent with the purposes and policies set forth in this article. In areas to which these agreements are applicable, the procedures

for elimination and prevention of duplication of electric distribution facilities set forth in these agreements shall govern. The following agreements are therefore mandated by the State of Alabama to be applicable:

. . . .

(3) Agreement between the City of Tarrant City, Alabama and Alabama Power Company dated June 8, 1983 regarding electric service areas in and around Tarrant City, Alabama.

. . . .

(13) Agreement between Southern Pine Electric Cooperative, Inc. and the City of Evergreen, Alabama as such agreement is reflected in the resolution of the city council of the City of Evergreen dated June 6, 1967 relating to electric service in the City of Evergreen.

. . . .

(15) Agreement between the utilities board of the City of Cullman and the Cullman Electric Cooperative dated November 5, 1954.

. . . .

Subsequent to May 20, 1985 [the effective date of the 1985 Act], suppliers [of electricity] shall be permitted to enter into mutual agreements, approved by the respective governing bodies of all suppliers affected by the agreements, respecting the nonduplication of lines, that are consistent with the purposes and policies set forth in this article; *provided, however, that no subsequent agreement shall be valid unless and until it has been reviewed by the legislature.*

Ala.Code § 37–14–36 (Michie 1992) (emphasis added). Under the 1985 Act, therefore, the Alabama Legislature must explicitly approve any customer allocations the parties might wish to make.

The Cities urge us to reject the district court's conclusion—that section 37–14–36 covers the implementation of these agreements—because it makes no practical sense.[2] Under the district court's approach, the Cities observe, it might take months before the Legislature could approve the parties' agreement as to which party should serve a new customer; consequently, the customer might go without electricity.

■■■ Notwithstanding this possibility, we reject appellants' argument. The district court's interpretation is consistent with the plain language of the statute. When construing a state statute, we look to state rules of statutory construction, because the same rules of construction apply in a federal court as would apply in a state court. *See Thomas v. Reliance Ins. Co.*, 617 F.2d 122, 125 (5th Cir.1980).[3] Under Alabama law, statutes are presumed valid, and a reviewing court must adopt the construction of a legislative enactment that will sustain its validity. *See House v. Cullman County*, 593 So.2d 69, 71–72 (Ala. 1992). The district court faced a choice between two reasonable interpretations of the statute; it chose the interpretation that sustained the Acts' validity and furthered the obvious intent of the Alabama Legislature to confer state action immunity to the parties of the incorporated agreements. Had the court interpreted the Acts as not requiring legislative approval of the parties' implementation of the three agreements, the Acts would not have conferred state action immunity. Although legislative approval of a customer allocation might be delayed, in a given case, it is not our province to condition immunity from antitrust prosecution on the wisdom of the Legislature's decision. *See Hoover v. Ronwin*, 466 U.S. 558, 574, 104 S.Ct. 1989, 1998, 80 L.Ed.2d 590 (1984) (noting that state need not act "wisely" to be immune).

We therefore hold that the private agreements in question in this case qualify for state action immunity.[4] Accordingly, we af-

---

**2.** The Cities concede that section 37–14–36 would cover the parties' "new" agreements; that is, agreements not made in the process of implementing the existing agreements.

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the

former Fifth Circuit handed down prior to October 1, 1981.

**4.** The Cities also argue that, in applying the second part of *Midcal's* test, we must determine whether the Legislature, in incorporating the agreements into the Acts by reference, exercised sufficient independent judgment and control so

firm the decision of the district court dismissing the Cities' case.

IT IS SO ORDERED.

that the details of these service area assignments were established as a product of deliberate state intervention. This claim is patently meritless and warrants no discussion. *See Hoover*, 466 U.S. at 567–68, 104 S.Ct. at 1995 (holding that, under the *Parker* doctrine, a state legislature's actions in adopting legislation are *ipso facto* exempt from operation of antitrust laws, because its actions constitute those of the state). *See also City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365, 377–78, 111 S.Ct. 1344, 1352–53, 113 L.Ed.2d 382 (1991) (refusing to engage in a subjective analysis of a city's decision because it "would require the sort of deconstruction of the governmental process" that the Supreme Court has consistently sought to avoid).