**Emil Bassily Nokoula NADA; Ghada Yousef Saad Rufaihl; Mina Emil Nokoula Nada; Goorg Emil Nokoula Nada, Petitioners,**

v.

**Michael B. MUKASEY, Attorney General, Respondent.**

**No. 05–75306.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2008.

Filed March 5, 2008.

Aaron G. Murphy, Esq., Amjad Khan, Esq., Latham & Watkins, LLP, Los Angeles, CA, Alexandru A. Cristea, Esq., Downey, CA, for Petitioners.

CAC—District Counsel, Esq., Office of the District Counsel Department of Homeland Security, Los Angeles, CA, Ronald E. Lefevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Eric W. Marsteller, Esq., DOJ—U.S. Department of Justice Civil Div./Office of Immigration Lit., Joseph Muoio, Esq., DOJ—U.S. Department of Justice Civil Division/Appellate Staff, Washington, DC, DOJ—U.S. Department of Justice, Philadelphia, PA, for Respondent.

Before: TROTT, CLIFTON, and CALLAHAN, Circuit Judges.

## MEMORANDUM *

Petitioner Emil Nada, a citizen and native of Egypt, petitions for review of the Board of Immigration Appeals' ("BIA") order affirming and adopting the Immigration Judge's ("IJ") decision denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252, and grant the petition in part and remand.

■ We note at the outset that because the IJ found Nada credible, his testimony must be accepted as true. *Hartooni v. INS*, 21 F.3d 336, 342 (9th Cir.1994).[1] Furthermore, although certainly inartful, Nada's briefs to this court and the BIA— along with the notice of appeal to the BIA—did portray his ultimate objective of challenging the IJ's finding that Nada was not subjected to past persecution. *See Mamouzian v. Ashcroft*, 390 F.3d 1129, 1136 (9th Cir.2004); *Ladha v. INS*, 215 F.3d 889, 903 (9th Cir.2000) (finding issue raised in the notice of appeal but not in the briefs reviewable because "the notice of appeal is of great importance in raising claims before the BIA").

■ Because Nada did not waive the issue, the question becomes whether a reasonable adjudicator would be compelled to find that Nada was (1) persecuted, (2) on account of his religion, (3) by a group the Egyptian government was unable or un-

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The IJ made this finding despite Nada's failure to recall a prior visit to the U.S. during which he was arrested for receiving stolen property in 1992. The IJ's finding of credibility makes the arrest irrelevant for our purposes. It may, however, become relevant should this case reach the point where the Attorney General considers exercising its discretion to grant asylum under 8 U.S.C. § 1158(b)(1)(A). *See INS v. Aguirre–Aguirre*, 526 U.S. 415, 420, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999).

willing to control. *Navas v. INS*, 217 F.3d 646, 655–56 (9th Cir.2000). As to the first element, a fire bombing of one's home, while his family was present, combined with a separate attack on his wife and threats on the life of his family certainly exceed what has been found to constitute persecution in this circuit. *See, e.g., Singh v. INS*, 94 F.3d 1353, 1357–58 (9th Cir. 1996) (finding persecution in case of threats against petitioner and his family, one attempted break in, and three assaults on petitioner resulting in one minor injury).

As to the second element, it is clear from the record that the attacks and threats against Nada and his family arose, at least in part, out of his religious activities—specifically, counseling a Coptic Christian girl named Mary to return to church instead of marrying a Muslim boy and converting to Islam. *See Borja v. INS*, 175 F.3d 732, 735–36 (9th Cir.1999) (en banc). This issue was presented to the IJ and the IJ decided that the attacks and threats were solely because of Nada's role in convincing Mary to end her relationship with the boy. The issue was also before the BIA. Thus, the issue need not be remanded because the agency had the opportunity to consider it and in fact did. *See Navas*, 217 F.3d at 661.

As to the third element, "police inaction in the face of . . . persecution can suffice" to show an unwillingness or inability to control the persecuting agent. *Id.* at 656 n. 10. Although the police had only a few days to respond to Nada's complaints, their failure to do so seems extreme because Nada reported a fire bombing of his occupied apartment, and, soon after, told the police exactly where one of the assailants was located. Additionally, that there was later a warrant issued for Nada's arrest apparently related to his counseling of Mary suggests further that the authorities were uninterested in protecting him. Finally, the Country Reports in the record demonstrate government bias against, and even harassment of, Coptic Christians in situations very similar to that which Nada found himself.

■ Based on the foregoing, we hold that the record compels the finding that Nada suffered past persecution. This "triggers a regulatory presumption that the applicant has a well-founded fear of future persecution," which, upon remand, can be rebutted by showing that the circumstances in Egypt "have changed to such an extent that [Nada] no longer has a well-founded fear of being persecuted were he to return." *Singh*, 94 F.3d at 1360–61 (citing 8 C.F.R. § 208.13(b)(1)(i)). Because the agency "has not yet considered the 'changed circumstances' issue," the case will be remanded to "giv[e] the BIA the opportunity to address the matter in the first instance." *INS v. Ventura*, 537 U.S. 12, 17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). It is not clear, let alone virtually certain, that Nada demonstrated a well-found fear of future persecution independent of this presumption. *See Mamouzian*, 390 F.3d at 1134.

In light of the foregoing, the IJ's decision denying withholding of removal and relief under the CAT are vacated and remanded as well.

**PETITION GRANTED** in part and **REMANDED.**