Nune MAMOUZIAN, Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 03–71469.

United States Court of Appeals,
Ninth Circuit.

Submitted Sept. 2, 2004.*

Filed Dec. 9, 2004.

---

\* This panel unanimously finds this case suit-
able for decision without oral argument.  See  Fed. R.App. P. 34(a)(2).

Asbet A. Issakhanian, Glendale, CA, for the petitioner.

Peter D. Keisler, Terri J. Scadron, and Leslie McKay, Washington, D.C., for the respondent.

Before REINHARDT, WARDLAW, and PAEZ, Circuit Judges.

REINHARDT, Circuit Judge.

Nune Mamouzian, a native and citizen of Armenia, petitions for review of a decision of the Board of Immigration Appeals ("BIA"). The BIA affirmed without opin-

ion the Immigration Judge's ("IJ") denial of her applications for political asylum, withholding of deportation, and protection under the Convention Against Torture ("CAT"). We have jurisdiction over her petition for review pursuant to 8 U.S.C. § 1252. We conclude that the IJ erred in determining that Mamouzian has not established a well-founded fear of future persecution on account of political opinion. Therefore, we grant Mamouzian's petition for review and remand.

## I.

Mamouzian testified to the following at her asylum hearing before the IJ: She worked as an electrical engineer for a state-owned factory from 1989 through the fall of 1995. In September of 1995, the director of the factory, a member of the ruling "HeHeShe" party,[1] asked Mamouzian to help sell the factory's machinery to governments in Iran, Libya, and North Korea. After assisting in a couple of transactions over the course of three months, she told the factory director that she opposed the dismantling of the factory despite the profits such sales would bring to the government because she "did not want the factory to . . . stay jobless." The director became very angry with her and called the police. After arresting Mamouzian, the police hit and kicked her until she lost consciousness. She was detained for one week and released only after her family paid a fine. After the arrest, Mamouzian was fired from the factory and was subsequently unable to find another job.

Approximately one year later, Mamouzian participated in a massive anti-government rally, demanding the resignation of the ruling HeHeShe party officials. She and other demonstrators who were holding banners in the front row of the crowd were attacked and arrested by the police. At the police station, Mamouzian explained why she opposed the HeHeShe party, at which point the officers beat her for about twenty minutes. The next day, she was taken to court, where she testified regarding her opposition to the HeHeShe party's policies, including the policy of dismantling and selling off government factories, and her disgust with political corruption. According to Mamouzian, the judge became so upset by her testimony that he accused her of being "an anti-government person" and forbade her to leave the country for two years. Again, the authorities released her only after her family paid a fine.

After Mamouzian's court appearance, government personnel began to follow her and, on several occasions, threatened her life. On June 5, 1997, two government officials searched Mamouzian's home and found articles that she had authored criticizing the ruling party and protesting government corruption. Then, "[t]hey started slapping me on my face and kicked me. I fell down and they said 'we catch you with something similar again, we will jail you.'" Fearing for her safety, Mamouzian fled Armenia for Moscow. In Moscow, she worked with a smuggler (whom she referred to as a "mediator"), to get a visa to Mexico; from Mexico she entered the United States.

In an oral decision issued in September 1999, an IJ denied Mamouzian's applications for asylum, withholding of deportation, and protection under CAT. He concluded that Mamouzian's experiences did not rise to the level of persecution and were not on account of her political opinion. According to the IJ, opposition to "corruption is not a ground[ ] for a grant of asylum in the United States." Further-

---

**1.** While the transcript refers to the ruling party as "Herhersher," Mamouzian's asylum application and the State Department Reports refer to it as "HeHeShe" or the Armenian National Movement ("ANM"). We will use "HeHeShe."

more, the IJ concluded that Mamouzian's ability to leave the country using her own passport undermined her claim that she had a well-founded fear of persecution by Armenian authorities, and he found that her fear was not objectively reasonable in light of the conditions in Armenia. Finally, he concluded that she would not be eligible for asylum as a matter of discretion, even if she were statutorily eligible, because she had used fraudulent documents to enter the United States and had failed to seek asylum in Russia or Mexico. In addition, the IJ denied Mamouzian's CAT claim, asserting that she indicated "nothing more than a gentle description of an alleged beating and mistreatment."

On March 17, 2003, one member of the Board affirmed the decision of the IJ without opinion. This petition for review followed.

## II.

■ Where, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision. *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 849 (9th Cir.2003). We must uphold the decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (citation omitted). We reverse if a reasonable factfinder would be compelled to conclude that the requisite persecution or fear has been shown. *Id.* at 483–84, 112 S.Ct. 812; *Singh v. INS*, 134 F.3d 962, 966 (9th Cir.1998).

■ To establish eligibility for asylum, Mamouzian must prove that she is unable or unwilling to return to her home country because of a well-founded fear of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion ...." 8 U.S.C. § 1101(a)(42)(A); *see INS v. Cardoza–Fonseca*, 480 U.S. 421, 428, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). "A well-founded fear of future persecution may be established by proving either past persecution or 'good reason' to fear 'future persecution.'" *Navas v. INS*, 217 F.3d 646, 654 (9th Cir.2000) (citation omitted).

■ According to the IJ, the physical abuse Mamouzian suffered was too "gentle" to rise to the level of persecution. The government on appeal similarly argues that the "physical abuse" was "mild." Yet Mamouzian testified that she was beaten by government officials on three occasions, on two of which she was also kicked. One of the beatings and kickings caused her to lose consciousness for some period. She further testified that she was jailed twice in retaliation for her political expression, and that her life was threatened by government authorities on other occasions as well. Because the IJ made no express adverse credibility determination, we accept this testimony as true. *See Lim v. INS*, 224 F.3d 929, 933 (9th Cir.2000).[2]

2. On appeal, the government does not assert that the IJ made any adverse credibility determination, nor does it contend that Mamouzian's testimony should be discredited. We take the government's case as it is presented to us.

In any event, even if the IJ's adverse comments were treated as an adverse credibility determination, such determination would not be supported by substantial evidence and therefore would require reversal. *See Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir.2002). The IJ provided no "legitimate articulable basis to question the petitioner's credibility," nor did he offer a "specific, cogent reason" for his disbelief, as required by our precedent. *See Shah v. INS*, 220 F.3d 1062, 1067 (9th Cir. 2000) (internal citations and quotation marks omitted). Instead, his comments were based on "impermissible speculation and conjecture" about what "[government] authorities would or would not do under certain circumstances." *Ge v. Ashcroft*, 367 F.3d 1121, 1124–25 (9th Cir.2004); *see also Salaam v. INS*, 229 F.3d 1234, 1238 (9th Cir.2000).

■ We have consistently found persecution where, as here, the petitioner was physically harmed. *Duarte de Guinac v. INS*, 179 F.3d 1156, 1161 (9th Cir.1999). Where such harm was inflicted on more than one occasion over a period of years, and where the physical abuse was combined with other incidents, such as detention and threats, "the harm is severe enough that no reasonable fact-finder could conclude that it did not rise to the level of persecution . . . ." *Chand v. INS*, 222 F.3d 1066, 1074 (9th Cir.2000); *see also Korablina v. INS*, 158 F.3d 1038, 1044 (9th Cir.1998) (cumulative effect of several instances of violence and harassment compel finding of past persecution).[3] Indeed, we have held that death threats alone can compel a finding of past persecution, especially when those threats occur in conjunction with detention, attacks, or even close confrontations. *See, e.g., Ruano v. Ashcroft*, 301 F.3d 1155, 1159–60 (9th Cir. 2002); *Salazar–Paucar v. INS*, 281 F.3d 1069, 1074–75 (9th Cir.2002); *Reyes–Guerrero v. INS*, 192 F.3d 1241, 1245–46 (9th Cir.1999); *Leiva–Montalvo v. INS*, 173 F.3d 749, 751 (9th Cir.1999). Thus, there is no doubt that Mamouzian has made a sufficient showing of persecution. We hold that any reasonable fact-finder would be compelled to conclude that the repeated beatings, arrests, and threats suffered by Mamouzian constitute persecution within the meaning of the asylum statute; the IJ erred in dismissing her experiences as "gentle" beatings.

■ The IJ also erred in concluding that the persecution was not on account of political opinion. The second and third attacks were unquestionably in retaliation for Mamouzian's political expression: She was arrested and beaten for participating in an anti-government rally, and was threatened and beaten as a result of articles she wrote in which she voiced opposition to corruption in the ruling party. In addition, the first attack, which occurred after Mamouzian voiced her opposition to the sale of state-owned factory equipment, was also at least in part "on account of" political opinion. Mamouzian expressed opposition to the economic policies of the ruling HeHeShe party as implemented in the state-run factory. The consequence was her arrest, beating, and detention. That Mamouzian's supervisor might also have been motivated by personal dislike, as the government contends, does not undermine Mamouzian's claim of persecution. An applicant need only produce evidence from which it is reasonable to believe that the harm was motivated, at least in part, by an actual or implied protected ground. *Borja v. INS*, 175 F.3d 732, 736 (9th Cir. 1999) (en banc); *see also Agbuya v. INS*, 241 F.3d 1224, 1228 (9th Cir.2001).

■ The IJ's conclusion that persecution resulting from opposition to government corruption cannot form the basis for an asylum claim is without support. Indeed, we have repeatedly held that retaliation against an individual who opposes government corruption can constitute persecution on account of political opinion. *See Hasan v. Ashcroft*, 380 F.3d 1114, 1120–21 (9th Cir.2004); *Njuguna v. Ashcroft*, 374 F.3d 765, 770–71 (9th Cir.2004); *Grava v. INS*, 205 F.3d 1177, 1181 (9th

---

3. The government points to *Prasad v. INS*, 47 F.3d 336, 339 (9th Cir.1995), for the proposition that beatings on account of political activity do not rise to the level of past persecution. However, as we pointed out in *Chand*, "the beating at issue [in *Prasad*] was a single, non-serious incident," that occurred in the immediate aftermath of a coup, and "no one in Fiji had any 'continuing interest' in persecuting Prasad beyond that one event." *Chand*, 222 F.3d at 1075. Here, Mamouzian was not only detained twice, and beaten on three occasions, but the government continued to engage in surveillance and threats even after her release from her second detention.

Cir.2000). The "salient question" is whether the petitioner's opposition to corruption was "directed toward a governing institution, or only against individuals whose corruption was aberrational." *Grava*, 205 F.3d at 1181. "When the alleged corruption is inextricably intertwined with governmental operation," opposition to "such an abuse of public trust is necessarily political." *Id.* In this case, Mamouzian's acts of protest were directed toward the policies and practices of the governing party, and not against "aberrational" corrupt practices of a single individual. Thus, the IJ's conclusion that Mamouzian's persecution was not on account of political opinion is clearly at odds with the record and with circuit law.

In sum, Mamouzian has demonstrated that her experiences rose to the level of persecution, that the persecution was on account of political opinion, and that it was perpetrated by government officials. Accordingly, the record compels a conclusion that she suffered past persecution. *See Chand*, 222 F.3d at 1073.

### III.

■ Once a petitioner demonstrates past persecution, she is entitled to a presumption of a well-founded fear of future persecution. *See Korablina v. INS*, 158 F.3d 1038, 1043 (9th Cir.1998). The government must then rebut that presumption by demonstrating by a preponderance of the evidence that country conditions have changed or that relocation is possible, so that the petitioner no longer has a well-founded fear that she would be persecuted if she were to return. *See* 8 C.F.R. § 208.13(b)(1). Here, the IJ did not apply the presumption and therefore did not consider whether the government met its rebuttal burden. In such cases, we sometimes remand for the agency to resolve the question of changed conditions in the first instance. *See INS v. Ventura*, 537 U.S. 12, 14, 17–18, 123 S.Ct. 353, 154 L.Ed.2d 272(2002) (per curiam); *Lopez v. Ashcroft*, 366 F.3d 799, 806–07 (9th Cir.2004). Under some circumstances, however, such as where the government has made no arguments before the IJ or the BIA concerning changed conditions, we do not remand. *See Baballah v. Ashcroft*, 367 F.3d 1067, 1078 n. 11 (9th Cir.2004); *Ndom v. Ashcroft*, 384 F.3d 743, 756 (9th Cir.2004). Here, we need not decide whether remand for an analysis of changed conditions would be necessary because we conclude that Mamouzian has demonstrated a well-founded fear of future persecution independent of any finding of past persecution and independent of the consequent presumption that such fear exists.

After deciding that Mamouzian had not demonstrated past persecution, the IJ went on to consider whether, even so, she had an objectively well-founded fear of future persecution. He concluded that she had not met her burden in that regard. Because the agency made a full and reasoned determination on the question of well-founded fear, we do not remand for further consideration. Instead, we review the decision to determine whether it was supported by substantial evidence. *See Khup v. Ashcroft*, 376 F.3d 898, 904 (9th Cir.2004) (declining to remand for an analysis of changed country conditions because applicant established a well-founded fear without the benefit of the presumption).

■ In order to qualify for asylum on the basis of a fear of future persecution, Mamouzian's fear "must be both subjectively [genuine] and objectively reasonable." *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir.2003) (alteration in original) (internal citations and quotation marks omitted). "The reasonableness of the fear must be determined in the political, social and cultural milieu of the place where the petitioner lived[,] and even a ten percent chance of persecution may establish a well-

founded fear." *Khup,* 376 F.3d at 904 (alteration in original) (internal citations and quotation marks omitted); *see also INS v. Cardoza–Fonseca,* 480 U.S. 421, 431, 440, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Al–Harbi v. INS,* 242 F.3d 882, 888 (9th Cir.2001).

▮ The government argues that Mamouzian has waived her opportunity to challenge the IJ's decision regarding her fear of future persecution by failing to properly brief the issue. Mamouzian's brief may not be perfectly written, but it is not difficult to discern the point she is trying to make. The brief discusses the grounds upon which a grant of asylum can be made, explains that the basis for Mamouzian's fear is her political opinion, and argues that she "is more than likely to suffer future persecution should [she] return to Armenia." We will not ignore the ultimate objective of Mamouzian's appeal—to demonstrate that she has a well-founded fear of future persecution—by parsing her brief's language in a hyper technical manner. Just as deportation statutes must be construed in favor of the alien because deportation is a "harsh measure ... all the more replete with danger when the alien makes a claim that he or she will be subject to death or persecution if forced to return to his or her home country," *Cardoza–Fonseca,* 480 U.S. at 449, 107 S.Ct. 1207; *see also INS v. St. Cyr,* 533 U.S. 289, 320, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Kwai Fun Wong v.*

*United States,* 373 F.3d 952, 962 (9th Cir. 2004), the briefs of aliens seeking refugee status must be reviewed with lenity and any ambiguities must be resolved in their favor. *See Ndom,* 384 F.3d at 750–51 (construing an "inartful" brief in petitioner's favor). Thus, Mamouzian's brief is sufficient to raise a claim of a well-founded fear of future persecution.[4]

▮ We also reject the government's alternative argument, that Mamouzian's fear of political persecution is neither subjectively genuine nor objectively reasonable. In general, an alien satisfies the subjective component of the well-founded fear test by testifying credibly about his fear of future persecution. *See Korablina,* 158 F.3d at 1044. The government contends that this case is different, because while Mamouzian testified that she fears punishment on account of violating the court order that prohibited her from leaving the country, she does not genuinely fear persecution on account of political opinion. In light of the circumstances surrounding the imposition of the court order, this argument makes little sense. Mamouzian was arrested, brought to court, and prohibited from leaving the country because she engaged in anti-government political expression. Any punishment that occurs as a result of the court proceedings and order necessarily constitutes punishment on account of political opinion.[5]

---

4. Even if Mamouzian had not sufficiently raised the claim of future persecution, we retain discretion to decide the merits of her claim " 'because the government briefed it, and thus suffers no prejudice from [the petitioner's] failure to properly raise the issue.' " *Ndom,* 384 F.3d at 751 (quoting *Singh v. Ashcroft,* 361 F.3d 1152, 1157 n. 3 (9th Cir. 2004)). Furthermore, we may review an issue not presented in an opening brief if a failure to do so would result in a manifest

injustice. *Koerner v. Grigas,* 328 F.3d 1039, 1048–49 (9th Cir.2003).

5. Furthermore, we have held that an alien qualifies for asylum if she can demonstrate that she would be subject to severe penalties for her illegal departure or unauthorized stay abroad and that she left or has remained abroad on account of race, religion, nationality, membership in a social group, or political opinion. *Rodriguez–Roman v. INS,* 98 F.3d 416, 429 (9th Cir.1996).

The record also compels the conclusion that Mamouzian's fear of future persecution is objectively reasonable. Government authorities threatened that she would be jailed, and even possibly killed, if she continued to speak out against corruption in the ruling party. Specific threats can give rise to a well-founded fear of future persecution, even when a petitioner has not suffered past persecution. *See, e.g., Lim v. INS*, 224 F.3d 929, 936 (9th Cir.2000); *Mgoian v. INS*, 184 F.3d 1029 (9th Cir.1999) (holding that an Armenian woman who was threatened and harassed, but never physically harmed, had a well founded fear of future persecution). Mamouzian had already endured arrests, beatings, and detention on account of her political expression. In light of these experiences, a reasonable fact-finder would be compelled to conclude that her fear of future persecution was objectively reasonable.[6] Contrary to the IJ's assertion, Mamouzian's successful evasion of government authorities and flight from Armenia does not make her fear any less objectively reasonable. A petitioner's ability to escape her persecutors does not undermine her claim of a well-founded fear of future persecution, even when she succeeds in obtaining government documents that permit her to depart. *See Khup*, 376 F.3d at 905 (rejecting argument that petitioner's ability to procure a passport belied his claim of persecution because "there [wa]s no evidence in the record on which to conclude that the ability to renew a passport signifies that a person does not have a genuine fear of future persecution"); *Hoxha*, 319 F.3d at 1184 ("[T]he fact that Hoxha received a passport does not alter our conclusion that Hoxha has presented evidence that compels a finding that he entertains a well-founded fear of persecution.").

Notwithstanding Mamouzian's testimony, the IJ rejected her claim of a well-founded fear on the grounds that freedom of assembly and political opinion are formally guaranteed by the Armenian constitution, that "political intimidation has remained, for the most part, episodic, rather than systemic," and that "[t]here were no reports of political killings" or "politically motivated disappearances." In so doing, the IJ impermissibly "extrapolat[ed] specific findings regarding an applicant from general information about country conditions reflected in State Department reports," *Hoque v. Ashcroft*, 367 F.3d 1190, 1197–98 (9th Cir.2004), while simultaneously mischaracterizing the conclusions of the reports. Contrary to the IJ's assertions, the country reports in the record actually bolster Mamouzian's testimony by depicting a country rife with political corruption and police abuse. According to the reports, there have been widespread irregularities in elections, making peaceful political change difficult. *See* U.S. Dept. of State, *Armenia Country Report on Human Rights Practices for 1996* at 1; U.S. Dept. of State, *Armenia Country Report on Human Rights Practices for 1998* at 2. Arbitrary arrests and detentions without warrants are common and "[m]embers of the security forces routinely beat detainees during arrest and interrogation." *1998 Country Report* at 2. The judicial system is not independent and prison conditions are poor. *Id.* at 4. In short, the evidence of country conditions contained in the record demonstrates that the beatings, detention, and threats Mamouzian experienced are not atypical or unusual in Armenia.

---

**6.** Were Mamouzian to refrain from political protest in the future, she very well might be able to escape future persecution. However, just as we do not require a petitioner to convert to a government-supported religion in order to avoid persecution, we do not require renunciation of anti-government political beliefs.

Consequently, the record compels the conclusion that her fear of future persecution is objectively reasonable.

## IV.

■ Because Mamouzian is statutorily eligible for asylum, the Attorney General must determine whether she is entitled to asylum as a matter of discretion. *See Kalubi v. Ashcroft,* 364 F.3d 1134, 1137 (9th Cir.2004). It is not clear from the IJ's decision whether he has already made a negative discretionary determination, or whether he simply noted that if Mamouzian had been statutorily eligible, her failure to apply for asylum in Russia and her unlawful entrance into the United States might have resulted in a negative ruling. Because the government asserts that the IJ did make such a determination, we will discuss that part of his decision briefly.

Assuming the ruling included a discretionary determination, that part of the IJ's decision must also be reversed. First, the IJ abused his discretion in failing to balance all of the factors in favor of a discretionary grant against the factors that he identified as negative. *See id.* at 1139, 1140 & n. 6 (explaining that discretionary denials must show that the agency considered and weighed positive factors as well as negative factors). Instead, the IJ based his discretionary decision on his erroneous rejection of Mamouzian's underlying persecution claim. That is, his faulty determination that Mamouzian was not *eligible* for asylum impermissibly colored his discussion of whether or not she was *entitled* to asylum. As a result, he failed to acknowledge and consider the past harm and future danger that qualified Mamouzian for refugee status.

Second, in determining that Mamouzian's stay in Russia should weigh against her for the purposes of his discretionary determination, the IJ relied on *Matter of Pula,* 19 I & N Dec. 467 (BIA 1987), a case that had already been superceded in relevant part by a new regulation. *See Andriasian v. INS,* 180 F.3d 1033, 1043–44 (9th Cir.1999). Stays in third countries are now governed by 8 C.F.R. § 208.15, which specifies how and when an opportunity to reside in a third country justifies a denial of asylum.[7] Indeed, the government implicitly concedes that because of the reliance on *Matter of Pula,* the IJ's discretionary determination cannot stand.

■ Finally, the way in which Mamouzian entered this country is worth little if any weight in the balancing of positive and negative factors. We have recognized that, in order to secure entry to the United States and to escape their persecutors, genuine refugees may lie to immigration officials and use false documentation. *See Akinmade v. INS,* 196 F.3d 951, 955 (9th Cir.1999). When a petitioner who fears deportation to his country of origin uses false documentation or makes false statements in order to gain entry to a safe haven, that deception "does not detract from but supports his claim of fear of persecution." *Id.* (quoting *Turcios v. INS,* 821 F.2d 1396, 1400–01 (9th Cir.1987)). Accordingly, it would be anomalous for an asylum seeker's means of entry to render her ineligible for a favorable exercise of discretion.

7. Mamouzian testified that she stayed in Russia only long enough to arrange travel to the United States and that she was unable to obtain legal status in Russia. She pointed to documentary evidence indicating that popular opposition to the resettlement of Armenians was widespread, resulting in harassment, discrimination, and violence against Armenian refugees. Thus, Mamouzian was not "firmly resettled" in Russia within the meaning of 8 C.F.R. § 208.15, and she remains eligible for asylum in the United States. The government does not contend otherwise.

We remand so that the Attorney General may consider whether to exercise his discretion in light of our holding that Mamouzian suffered past persecution on account of political opinion and that she has a well-founded fear of future persecution.

### V.

While asylum is discretionary, a petitioner is entitled to withholding of removal "if the evidence demonstrates a clear probability that the applicant would be persecuted were he to be deported to his home country." *Gui v. INS,* 280 F.3d 1217, 1230 (9th Cir.2002) (internal quotation marks and citation omitted). If a petitioner meets this high standard, the Attorney General must grant withholding under 8 U.S.C. § 1231(b)(3). Although Mamouzian has demonstrated that she has a reasonable fear of future persecution, we cannot conclude that the record compels a finding that it is *more likely than not* that Mamouzian will be persecuted upon return.

Likewise, the record does not compel the conclusion that it is more likely than not that Mamouzian will be tortured upon return to Armenia. Therefore, we affirm the IJ's denial of her petition for protection under CAT. *See* 8 C.F.R. § 208.16(c) (2002).

### VI.

For the foregoing reasons, we grant the petition for review and find Mamouzian statutorily eligible for asylum. We remand solely for an exercise of statutory discretion. However, we affirm the IJ's decision that Mamouzian does not meet the criteria for withholding of removal and protection under CAT and deny the petition as to those forms of relief.

GRANTED in part; REMANDED in part; DENIED in part.