**Eyob WOLDEMICHAEL, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

**Nos. 03–72610, 04–74022.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 21, 2006.

Decided Aug. 21, 2006.

---

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Thomas Hailu, Esq., Law Office of Thomas Hailu, Alexandria, VA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, OIL, Linda S. Wendtland, Esq., Shelley R. Goad, Esq., U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, Ronald E. LeFevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, for Respondent.

Before GOODWIN, B. FLETCHER, and FISHER, Circuit Judges.

MEMORANDUM *

Petitioner Eyob Woldemichael is an Ethiopian national of Eritrean heritage. He first appeals the Bureau of Immigration Appeals' denial of asylum, withholding of removal, and relief under the Convention Against Torture. Second, he appeals the BIA's denial of a motion to reopen his removal proceedings based on newly discovered evidence. We have jurisdiction over both appeals pursuant to 8 U.S.C. § 1252(a), grant Woldemichael's first petition, and remand to the Attorney General for the exercise of discretion.[1]

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Because we grant his petition on another

## I.

The BIA's decision that an alien has not established eligibility for asylum is reviewed under the substantial evidence standard. *Njuguna v. Ashcroft,* 374 F.3d 765, 769 (9th Cir.2004); *Hoque v. Ashcroft,* 367 F.3d 1190, 1194 (9th Cir.2004). Since neither the Immigration Judge nor the BIA made an adverse credibility finding, we presume Woldemichael to be credible and take his factual contentions as true. *Kataria v. INS,* 232 F.3d 1107, 1114 (9th Cir.2000).

## II.

■ The IJ assumed that Woldemichael established past persecution on the basis of his Eritrean ethnicity, but found that the presumption that he had a well-founded fear of future persecution had been rebutted.[2]

We agree that Woldemichael has made a showing of past persecution. To make such a showing, a petitioner must prove an incident that: (1) rises to the level of persecution; (2) is on account of one of the statutorily-protected grounds of race, religion, nationality, membership in a particular social group, or political opinion; and (3) is committed by the government or forces the government is either unable or unwilling to control. *See Knezevic v. Ashcroft,* 367 F.3d 1206, 1211 (9th Cir.2004).

After being terminated from his job as a government journalist because of his Eritrean heritage, Woldemichael was arrested by three police officers on charges of financially supporting the Eritrean government and leaking the secrets of the Ethiopian government. He was held at the Central Jail in Addis Ababa for two weeks.

For the first three days of his detention, Woldemichael was continuously beaten on his head, back, and feet, with a dirty rag stuffed in his mouth to muffle his screams. His captors interrogated Woldemichael about whether he had revealed government secrets, and one of his interrogators placed his gun to Woldemichael's head, threatening to shoot him if he did not talk. Woldemichael testified that Ethiopia is second only to China in the detention and killing of journalists.

Physical violence or detention alone can form a basis for a finding of past persecution. *See, e.g., Ndom v. Ashcroft,* 384 F.3d 743, 752 (9th Cir.2004) (two detentions totaling 25 days were sufficient to establish persecution); *Mamouzian v. Ashcroft,* 390 F.3d 1129, 1132 (9th Cir.2004) (a detention, three instances of physical violence, and threats on the applicant's life were sufficient to show persecution); *Chand v. INS,* 222 F.3d 1066, 1073 (9th Cir.2000) ("Physical harm has consistently been treated as persecution."). The detention, beatings, and threats of death by government officials because of his Eritrean heritage are sufficient to establish past persecution.

■ The IJ erred in concluding that the presumption that Woldemichael had a well-founded fear of future persecution had been rebutted. In order to rebut the presumption of a well-founded fear of future persecution, the government must show by a preponderance of the evidence that a fundamental change in circumstances has occurred such that the applicant no longer has such a fear. 8 C.F.R. § 1208.13(b)(1)(i).

In support of its determination that the government had rebutted the presumption,

---

basis, we do not reach Woldemichael's contention that the BIA erroneously denied his motion to reopen his removal proceedings.

2. The parties are familiar with the facts, so we do not recite them except as is necessary to explain our reasoning.

the IJ pointed to two New York Times articles indicating that Ethiopia and Eritrea had agreed to a cease-fire a few days before Woldemichael's final hearing in June of 2000. These articles, despite their cautious optimism about the future relations between Ethiopia and Eritrea, form too tenuous a basis to rebut the presumption of well-founded fear of future persecution. Meeting this burden requires the government to present "evidence that, on an *individualized basis,* rebuts a particular applicant's specific grounds for his well-founded fear of future persecution." *Popova v. INS,* 273 F.3d 1251, 1259 (9th Cir.2001) (emphasis added) (quoting *Navas v. INS,* 217 F.3d 646, 662 (9th Cir.2000)). "Information about general changes in the country is not sufficient." *Garrovillas v. INS,* 156 F.3d 1010, 1017 (9th Cir.1998). At a minimum, the IJ was required to make an individualized analysis of how the cease fire, then only a few days old, alleviated Woldemichael's well-founded fear of future persecution should he return to Ethiopia.

The IJ also reasoned that the presumption of a well-founded fear of future persecution had been rebutted because "there is conflicting evidence that the Government was seeking the respondent," and the evidence as to government's motive to persecute Woldemichael was "mixed." As support for this characterization of the evidence, the IJ notes that the government issued Woldemichael a business license and a passport, and that his former employer wrote a letter supporting his application for an exit visa. We assume that the grant of the business license could be used to rebut the presumption that Woldemichael had a well-founded fear of future persecution. Any weight that this evidence may have had, however, is counter-balanced by the fact that the government took away that same license prior to Woldemichael's departure from Ethiopia.

■ Likewise, the evidence that Woldemichael was able to obtain documents permitting him to exit the country does not signify a fundamental change of circumstances such that his well-founded fear of future persecution was diminished or relieved. "A petitioner's ability to escape her persecutors does not undermine her claim of a well-founded fear of future persecution, even when she succeeds in obtaining government documents that permit her to depart." *Mamouzian,* 390 F.3d at 1137; *see also Khup v. Ashcroft,* 376 F.3d 898, 905 (9th Cir.2004) (rejecting the argument that the ability to obtain a passport defeats a claim of persecution when petitioner obtained the document only after paying a substantial sum). Woldemichael's passport was obtained before his arrest and incarceration, so it cannot signify a change of circumstances. Woldemichael was only able to obtain the exit visa by bribing Ethiopian immigration officials and presenting a letter from his former employer.[3] Thus, that he was able to obtain

---

3. The IJ made much of the letter issued by Woldemichael's former government employer supporting his application for an entry visa to Turkey. The IJ concluded that the letter established that "at least one part of the Ethiopian Government has support for [Woldemichael]." We are unpersuaded that this letter establishes by a preponderance that circumstances had fundamentally changed. It was issued within a few months of Woldemichael's arrest and detention, as the border war with Eritrea continued. The letter itself provides no indication that the agency was welcoming Woldemichael back into government service; it specifically indicates that he was "on leave . . . as a result of the problem between Ethiopia and Eritrea." It is not difficult to imagine that after eight years of service with this government agency, Woldemichael would have a friend willing to stick his neck out to aid Woldemichael's hasty departure. Moreover, even with the supporting letter, Woldemichael

these documents does not establish by a preponderance such a fundamental change of circumstances that Woldemichael no longer has a well-founded fear of future persecution.

We hold that Woldemichael is eligible for asylum. There is no need to remand to the BIA under *INS v. Ventura*, 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002), to assess whether changed country conditions rebut the presumption of a well-founded fear of future persecution. The IJ made the initial determination as to country conditions, in exercise of agency expertise, and the BIA had an opportunity to review that determination. Since the BIA declined to review the IJ's determination, it has forfeited its right to entertain the question of changed country conditions. *See Ali v. Ashcroft*, 394 F.3d 780, 788 (9th Cir.2005). Nonetheless, because the ultimate decision to grant asylum is discretionary, we remand so that the Attorney General may exercise his discretion as to whether to grant relief. Current country conditions may be considered as part of the exercise of that discretion. *See Hoxha v. Ashcroft*, 319 F.3d 1179, 1185 (9th Cir.2003).

### III.

We **GRANT** the petition and **REMAND** to the Attorney General for the exercise of discretion.

was required to bribe the immigration officials to obtain the visa.