**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

APR 11 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| HAO LIN, | No. 17-73053 |
| Petitioner, | Agency No. A209-869-002 |
| v. | |
| WILLIAM P. BARR, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 8, 2019
Pasadena, California

Before:  WARDLAW and BENNETT, Circuit Judges, and CARDONE,[**] District Judge.

Hao Lin, a native and citizen of China, petitions for review of the order of

the Board of Immigration Appeals ("BIA") dismissing his appeal from an

immigration judge's ("IJ") denial of his applications for asylum, withholding of

removal, and relief under the Convention Against Torture ("CAT").  We have

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]       The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

jurisdiction under 8 U.S.C. § 1252.  We grant Lin's petition in part, deny it in part, and remand to the BIA for further proceedings.

Where, as here, the BIA cites *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), to adopt and affirm the IJ's decision, but also provides its own review of the evidence and law, we review both the IJ's and BIA's decisions.  *See Ali v. Holder*, 637 F.3d 1025, 1028 (9th Cir. 2011).  We review questions of law *de novo* and questions of fact for "substantial evidence."  *Id.* at 1028–29.  We also review "denials of asylum, withholding of removal, and CAT relief for substantial evidence and will uphold a denial supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Yali Wang v. Sessions*, 861 F.3d 1003, 1007 (9th Cir. 2017).  We may reverse the agency's factual findings only if the record "compels" a contrary conclusion.  *Id.* (quoting *Rizk v. Holder*, 629 F.3d 1083, 1087 (9th Cir. 2011)).

1. The IJ and BIA denied Lin's asylum application after deciding he had not suffered past persecution in China and did not have a well-founded fear of future persecution.  The agency's finding that Lin did not suffer past persecution is not supported by substantial evidence.  The IJ found Lin's testimony credible but decided his mistreatment by Chinese authorities on account of his religion did not rise to the level of persecution.  However, the IJ misapplied our opinion in *Guo v. Ashcroft*, 361 F.3d 1194 (9th Cir. 2004).  The petitioner in that case experienced

two episodes of mistreatment in China, and we held that each episode independently rose to the level of past persecution. *Id.* at 1203. Lin's arrest, fifteen-day detention, two- to three-hour interrogation, forced exercise, and repeated physical abuse surpassed the level of mistreatment that Guo faced during his first instance of persecution. *See id.* at 1197–98. Moreover, Lin's mistreatment is distinguishable from that in *Gu v. Gonzales*, 454 F.3d 1014 (9th Cir. 2006), upon which the IJ and BIA relied. Lin faced a lengthier detention, was forced to run long distances and to perform pushups, and lost his job. *Cf. id.* at 1017–18, 1021 (finding no persecution where petitioner was arrested by Chinese authorities and detained for three days, interrogated for two hours, hit approximately ten times, required to report to the police station four or five times, and returned to his government job "without any negative consequences"). Accordingly, the record compels the conclusion that Lin suffered past persecution. *See Guo*, 361 F.3d at 1203.

After deciding Lin did not suffer past persecution, the IJ and BIA considered whether Lin had independently established a well-founded fear of future persecution, and found that he had not. "Because the agency made a full and reasoned determination on the question of well-founded fear, we do not remand," and instead we review the decision for substantial evidence. *See Mamouzian v. Ashcroft*, 390 F.3d 1129, 1135 (9th Cir. 2004).

17-73053

To qualify for asylum based on fear of future persecution, Lin's fear "must be both subjectively genuine and objectively reasonable." *See id.* (alteration and citation omitted). A petitioner's credible testimony that he or she genuinely fears persecution satisfies the subjective component. *Id.* at 1136. "The reasonableness of the fear must be determined in the political, social and cultural milieu of the place where the petitioner lived, and even a ten percent chance of persecution may establish a well-founded fear." *Id.* at 1135–36 (alteration and citation omitted).

The agency correctly determined that Lin satisfies the subjective component of the well-founded fear test based on his credible testimony. *See id.* at 1136. However, substantial evidence does not support the agency's finding that Lin's fear is not objectively reasonable. To begin, this finding was based in part upon the agency's incorrect conclusion that Lin did not face past persecution. Yet, because Lin has established past persecution, he is entitled to a presumption of a well-founded fear of future persecution. *See Smolniakova v. Gonzales*, 422 F.3d 1037, 1051 (9th Cir. 2005). In addition, the IJ and BIA failed to address that Chinese authorities threatened Lin with more harm if he were again arrested for practicing his religion. Threats are "evidence probative of the reasonableness of a fear of future persecution," and the agency erred by not considering this threat. *See Gui v. INS*, 280 F.3d 1217, 1229 (9th Cir. 2002). The IJ and BIA also erred by not considering the letter Lin's father submitted, which stated that after Lin left

China, the police notified his parents that Lin "should turn himself into the authorities" if he returns. *See id.*

The agency also wrongly concluded that "the documentary evidence"— namely, the country-conditions reports Lin had filed—"does not establish that [Lin] . . . would be persecuted on account of a religious belief." The agency "mischaracterize[ed] the conclusions of the reports" by ignoring large portions indicating Lin's risk of future harm in China. *See Mamouzian*, 390 F.3d at 1137. Viewing these reports in their entirety, they "actually bolster," rather than undermine, Lin's testimony. *See id.* Although the reports acknowledge "some improvements in the ability of some house churches to meet and operate" in China, proselytizing in public "is not permitted," and Chinese authorities "still regularly harassed and detained small groups that met for religious purposes in homes and other locations." Moreover, "adherents of both registered and unregistered religious groups" were "physically abused, detained, arrested, tortured, sentenced to prison, or harassed" for their "religious beliefs and practices." And, while the IJ correctly noted that the reports "do not highlight any such practices in the Fujian region," where Lin lived, they apparently emphasize only a small number of well-publicized cases of abuse occurring in the years preceding publication. By no means do they purport to be exhaustive of every major incident of abuse. Indeed, the reports explain that religious oppression occurs "[t]hroughout the county."

17-73053

The reports also give credence to Lin's testimony that he would easily be identified and rearrested if he returned to China. China has "issued a directive mandating the establishment of a centralized 'social credit system' to evaluate the trustworthiness of all individuals" in the country. The system is intended to subject people "to targeted daily monitoring, random inspections, and possible arrest and criminal prosecution" for "trust-breaking" conduct. To this end, China has installed "tens of millions of surveillance cameras throughout the country to monitor the general public," and has "covered every corner" of Beijing with a video surveillance system.

In sum, then, Lin presented credible, direct, and specific evidence from which "no reasonable fact-finder could conclude that [he] has less than a ten percent chance of future persecution" in China. *See Smolniakova*, 422 F.3d at 1051. The record thus compels the conclusion that Lin has a well-founded fear of future religious persecution. *See id.* at 1050; *Mamouzian*, 390 F.3d at 1137–38. Lin is statutorily eligible for asylum. *See Smolniakova*, 422 F.3d at 1053; *Mamouzian*, 390 F.3d at 1138. Accordingly, we grant Lin's petition for review with regard to his asylum claim and remand for the Attorney General to exercise his discretion whether to grant asylum. *See Singh v. Holder*, 764 F.3d 1153, 1163 (9th Cir. 2014); *Smolniakova*, 422 F.3d at 1053.

2. The IJ also denied Lin's application for withholding of removal, explaining that since he had failed to qualify for asylum, he necessarily "failed to meet the higher burden required for relief under withholding of removal." The BIA affirmed this decision.

However, because the record compels the conclusion that Lin experienced past persecution, he is presumed eligible for withholding of removal. *See Vitug v. Holder*, 723 F.3d 1056, 1064 (9th Cir. 2013). To rebut this presumption, "the government must show by a preponderance of the evidence that there has been a fundamental change in circumstances such that the petitioner's life or freedom would not be threatened or that the petitioner could relocate internally within his home country to avoid persecution." *See id.* at 1065 (alterations and internal quotation marks omitted) (quoting 8 C.F.R. § 1208.16(b)(1)). We therefore grant Lin's petition with regard to his withholding of removal claim and remand to the BIA to decide in the first instance whether the government can meet its burden of rebuttal. *See Mihalev v. Ashcroft*, 388 F.3d 722, 731 (9th Cir. 2004).

3. Lastly, the IJ and BIA denied Lin's application for protection under CAT. Lin waived his challenge to this denial by failing to substantively address it in his petition for review. *See Rios v. Lynch*, 807 F.3d 1123, 1125 n.1 (9th Cir. 2015) (explaining the petitioner had "abandoned his claims for asylum and CAT

protection by not addressing them with any specificity in his briefs").  As a result,

we deny Lin's petition for review with regard to his CAT claim.

**GRANTED** in part, **DENIED** in part, and **REMANDED** for further

proceedings.

8

*Lin v. Barr*, No. 17-73053

BENNETT, Circuit Judge, dissenting in part:

I agree with the majority's holding regarding Lin's withholding of removal and CAT claims. I also agree that the record compels the conclusion that Lin suffered past persecution, which raises a presumption that Lin has a well-founded fear of future persecution. *See Guo v. Sessions*, 897 F.3d 1208, 1213 (9th Cir. 2018). I respectfully dissent, however, from the majority's decision that the record compels the conclusion that Lin has a well-founded fear of future persecution.

"Our review of the BIA's determination that an applicant has not established eligibility for asylum is highly deferential." *Gu v. Gonzales*, 454 F.3d 1014, 1018 (9th Cir. 2006). "We may reverse the decision of the [BIA] only if the applicant shows that the evidence *compels* the conclusion that the asylum decision was incorrect." *Id.* "This 'strict standard' precludes us from 'independently weighing the evidence and holding that the petitioner is eligible for asylum, except in cases where compelling evidence is shown.'" *Id.* at 1018–19 (quoting *Kotasz v. INS*, 31 F.3d 847, 851 (9th Cir. 1994)).

To establish asylum eligibility based on a well-founded fear of future persecution, a petitioner's fear must be both "subjectively genuine and objectively reasonable." *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003) (internal brackets omitted) (quoting *Arriaga-Barrientos v. INS*, 925 F.2d 1177, 1178 (9th

1

Cir. 1991)).  Here, the agency determined that Lin subjectively fears persecution, but that Lin's fear is not objectively reasonable.

In my view, the record does not *compel* a conclusion that Lin's fear is objectively reasonable.  As noted by the immigration judge ("IJ"), after Lin's arrest, he was able to attend house church gatherings at the same house twice without incident, and the house church continued to hold regular gatherings even though the house church leader was arrested at the same time as Lin.  Further, when asked by the IJ why he returned to the house church only twice after his arrest, Lin responded that it was because "his parents were more strict."  Lin also stated that he would continue attending church in China if he returned.

The majority places significant weight on the country-conditions reports in the record to support its conclusion that Lin's fear is objectively reasonable.[1]  But the country-conditions reports present a mixed picture of the treatment of Christians in China.  For example, one report states that local authorities punished members of Christian house churches, but also states, in the same paragraph, "[i]n some parts of the country, however, local authorities allowed or at least did not interfere with the activities of unregistered religious groups."  Significantly, the

---

[1] The majority references a "social credit system" in China.  I note that the country-conditions reports indicate that the Chinese government issued a directive mandating the establishment of a centralized "social credit system," but it is unclear from the record whether or to what extent this system has been established in China.

reports do not highlight house church incidents in the Fujian region, where Lin is from.

While the majority points to evidence that could support a conclusion that Lin's fear is objectively reasonable, that evidence, when considered with the rest of the record, does not compel such a conclusion, given the highly deferential standard of review. *See Lolong v. Gonzales*, 484 F.3d 1173, 1178 (9th Cir. 2007) (en banc) ("We must uphold the BIA's determination unless 'the evidence not only supports, but *compels* the conclusion that the asylum decision was incorrect.' Even if we might have reached a conclusion different from that reached by the BIA, we may not reverse unless we determine that any reasonable factfinder would have been compelled to reach that conclusion." (citation omitted)).

I would therefore grant Lin's petition for review as to his asylum claim and direct the BIA, on remand, to determine whether the government can rebut the presumption of a well-founded fear of future persecution.[2] *See* 8 C.F.R. § 208.13(b)(1).

---

[2] During oral argument, counsel for both parties indicated that remand would be the appropriate remedy.

3