**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ANA GLORIA RODRIGUEZ DE AYALA,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

No.  17-72022

Agency No. A087-898-572

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 4, 2020[**]
Pasadena, California

Before:  IKUTA and CHRISTEN, Circuit Judges, and MARBLEY,[***] District Judge.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]    The Honorable Algenon L. Marbley, United States Chief District Judge for the Southern District of Ohio, sitting by designation.

Petitioner Ana Rodriguez de Ayala seeks review of the Board of Immigration Appeals decision denying her applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We have jurisdiction pursuant to 8 U.S.C. § 1252(a), and we grant the petition. Because the parties are familiar with the facts, we recite only those facts necessary to decide the issues on appeal.

1.	The Immigration Judge (IJ) found that although Rodriguez established past persecution on account of her membership in a particular social group, she failed to demonstrate that the government of El Salvador was unable or unwilling to protect her. That is the sole issue on appeal related to her claims for asylum and withholding, and we conclude that the record evidence compels the opposite conclusion. *See Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc). Rodriguez credibly testified that when her husband threatened to kill her, he warned her that she "shouldn't even dare to call the police because he was the police," and the police would not pay attention to her. She further credibly testified that the police in her community "help each other" and "wouldn't listen" to her reports about her husband's domestic violence. Petitioner's husband thus threatened that the police would not protect her, specifically because he was a police officer.

The country conditions report corroborates Rodriguez's credible testimony, but the IJ and BIA ignored the most relevant portions of that evidence. The report noted "high levels of impunity for crime and abuse of official authority," a "high level of domestic violence" and "violence and discrimination against women," and "widespread" incidents of rape and sex crimes against women. Although El Salvador passed laws prohibiting domestic violence, the report made clear that "in practice the government did not effectively enforce th[o]se provisions," that spousal rape was "not specifically addressed in the law," that "[l]aws against rape were not effectively enforced," that "laws against domestic violence were not well enforced, and cases were not effectively prosecuted," and that overall, "[t]he government's efforts to combat domestic violence were minimally effective." The report further explained that domestic violence "was a widespread and serious problem" that "was considered socially acceptable" and was largely underreported.

Significantly, Rodriguez testified that even when her adult daughter reported Rodriguez's husband's abuse of their younger children and obtained a protective order, the court subsequently "annulled" the order and returned Rodriguez's children to the custody of her husband, who continued to physically and emotionally abuse them. Here, the evidence compels the conclusion that the government was unable or unwilling to stop Rodriguez's husband from continuing

3

to commit acts of domestic violence. Having established that the government of El Salvador was unable or unwilling to protect her, Rodriguez is entitled to a presumption of a well-founded fear of future persecution. *See Mamouzian v. Ashcroft*, 390 F.3d 1129, 1135 (9th Cir. 2004). We remand for further proceedings consistent with this disposition on Rodriguez's asylum claim.

Eligibility for withholding of removal may similarly be established by demonstrating "a presumption of fear of future persecution based on past persecution." *See Tamang v. Holder*, 598 F.3d 1083, 1091 (9th Cir. 2010) (citing 8 C.F.R. § 1208.16(b)(1)(i)). A petitioner is entitled to withholding of removal if she demonstrates a "clear probability" that she would be subject to persecution upon returning to her home country. *Id.* (quoting *INS v. Stevic*, 467 U.S. 407, 429–30 (1984)). The clear probability standard is more stringent than the well-founded fear standard, *id.*, but the IJ concluded that Rodriguez failed to demonstrate her eligibility for withholding only because she failed to establish her eligibility for asylum. We therefore remand for the BIA to reconsider Rodriguez's withholding claim.

2. On Rodriguez's CAT claim, the record evidence compels the conclusion that the IJ erred on prong one of the analysis by concluding that the domestic abuse Rodriguez suffered did not rise to the level of torture. Torture is

4

"any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person" for specific reasons "such as punishing him or her for an act he or she or a third person has committed or is suspected of having committed." 8 C.F.R. § 1208.18(a)(1). Rodriguez's husband strangled her, repeatedly raped her, and hit, kicked, and pushed her. He also verbally abused Rodriguez, and emotionally and physically abused their children. The abuse Rodriguez suffered rises to the level of torture, and because at least some of it was meted out as punishment, it satisfies the requirements of § 1208.18.

**PETITION GRANTED; REMANDED.**

*Rodriguez de Ayala v. Barr*, 17-72022

IKUTA, Circuit Judge, dissenting:

This case is controlled by the standard of review. Because Rodriguez cannot "show that the evidence [she] presented was so compelling that *no* reasonable factfinder could fail to find" in her favor, *INS v. Elias-Zacarias*, 502 U.S. 478, 483–84 (1992) (emphasis added), we must uphold the BIA's determination. I therefore dissent.

To qualify for asylum or withholding of removal, an alien must show that her persecution was or will be inflicted by the government or forces that the government is "unable or unwilling to control." *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1062 (9th Cir. 2017) (quoting *Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010)). We can reverse the agency's finding on this question only if the record evidence "not only *supports* [the] conclusion" that the government is unable or unwilling to control the persecutor, "but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n.1 (emphasis in original). To qualify for relief under the Convention Against Torture (CAT), an alien must establish that she "more likely than not" would be "tortured" in the country of removal. 8 C.F.R. § 208.16(c)(2). Again, we can reverse the agency's finding only if we are compelled to find to the contrary. *Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1078 (9th Cir. 2015).

Here, the record does not compel us to overturn the agency. The record includes the following evidence. Rodriguez's husband, Jose, assaulted her daughter, Ana, and one of their sons. Ana reported the incident to the police. In March 2010, a court ruled that Jose's violent acts "constitute acts of domestic violence." The court issued a six-month protective order prohibiting Jose from threatening, harassing, or sharing a residence with Ana. The government gave Ana a copy of the order so that she could seek help from nearby police if Jose violated its terms. Pursuant to the order, Jose moved to his mother's house and "did not come back." It is not clear whether (or why) the protective order was terminated. Rodriguez testified that she did not know whether the order remained in effect, but also testified that the order was "annulled." If the court did annul the order, the record does not explain the circumstances or the court's reasoning.[1]

Based on the evidence that the government issued a protective order against Jose, and Jose complied with it, the agency's conclusion "that the government was willing to take actions against perpetrators of domestic violence" was well supported by the evidence. And this same evidence supports the agency's rejection

---

[1] Rodriguez testified that Jose obtained custody of their three sons in January 2011. Given that the restrictions in the March 2010 protective order were set to last for six months (i.e., until September 2010), this allegation sheds no light on whether or why the order was terminated.

of the claim that it was "more likely than not" that the government would acquiesce in Jose's acts of torture against Rodriguez.  8 C.F.R. § 208.16(c)(2).  We must uphold these conclusions, because we are not compelled to find otherwise. The bare allegation that the protective order was annulled (even assuming that occurred), without any explanation as to the reasons or circumstances, does not *compel* a reasonable jurist to conclude that the government is unable or unwilling to stop Jose's violent conduct.  And it is not enough to point to general statements in the country conditions report, because they do not *compel* us to overturn the agency's contrary findings.

Because I would deny Rodriguez's petition for review under this deferential standard, I respectfully dissent.