**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ZHEZHU JIANG, | No.    15-71731 |
| Petitioner, | Agency No. A098-463-015 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 21, 2023
Pasadena, California

Before:  WARDLAW and KOH, Circuit Judges, and MCMAHON,[**] District
Judge.

Petitioner Zhezhu Jiang ("Jiang") claims that he fled the People's Republic

of China after the police arrested and abused him for his participation in and

political support for unsanctioned religious activity.  The immigration judge ("IJ")

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Colleen McMahon, United States District Judge for
the Southern District of New York, sitting by designation.

found Jiang not credible and denied his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") for that and other reasons. The Board of Immigration Appeals ("BIA") dismissed the appeal based on the IJ's adverse credibility finding and the lack of corroborative evidence without ruling on any alternative ground reached by the IJ.

We have jurisdiction under 8 U.S.C. § 1252. We deny the petition in part and grant and remand in part.

1.      We conclude that the six inconsistencies found by the IJ, on which the BIA relied to dismiss Jiang's appeal, are either not inconsistent at all, are not supported by substantial evidence, or are minor inconsistencies that do not go to the "heart of the matter." These purported inconsistencies alone cannot support an adverse credibility finding in a pre-REAL ID Act case.[1]

First, the IJ reasoned that Jiang had testified inconsistently about his treatment by police, the extent of the injuries he suffered, and the reason for his hospitalization. However, what the IJ called "inconsistencies" were almost all omissions and "the mere omission of details is insufficient to uphold an adverse credibility finding." *Bandari v. I.N.S.*, 227 F.3d 1160, 1167 (9th Cir. 2000). Moreover, discrepancies that "cannot be viewed as attempts by the applicant to

---

[1] Jiang filed his initial asylum application on May 2, 2005, prior to the May 11, 2005, enactment of the REAL ID Act, so we apply the pre-REAL ID Act standard to his application. *Sinha v. Holder*, 564 F.3d 1015, 1021 n.3 (9th Cir. 2009).

2

enhance his claims of persecution have no bearing on credibility." *Damaize-Job v. I.N.S.*, 787 F.2d 1332, 1337 (9th Cir. 1986). The perceived discrepancies in Jiang's testimony minimized rather than enhanced the seriousness of his treatment by the police, which is the basis for his past persecution claim. As a result, the discrepancies do not support the adverse credibility determination.

Second, the agency erred by concluding that Jiang's inconsistent testimony about the length of his employment with the government of Hunchun City supported the IJ's adverse credibility determination. As the IJ found, Jiang stated in his I-589 form that he had worked for the city government for 15 years; however, in his direct testimony he said that he had worked there for 10 years. But the precise length of his job tenure presents, at most, a "minor inconsistenc[y] that do[es] not go to the heart of [Jiang's] claim," so it "cannot support an adverse credibility determination." *Kaur v. Gonzales*, 418 F.3d 1061, 1064 (9th Cir. 2005).

Third, the agency's adverse credibility determination cannot rest on the purportedly inconsistent testimony about how Jiang left China and entered the United States. The IJ's credibility finding turned on her speculation that Jiang traveled to Yanji City to purchase an airplane ticket on a day when he testified that he was hiding with his uncle in Tumen City. But there is no evidence in the record that Jiang personally purchased his ticket; he repeatedly and consistently testified that he paid a sum of money to a Chinese gang in exchange for all-

3

inclusive passage to the United States, which included his airplane ticket. Speculation that Jiang must have traveled to Yanji City to purchase his ticket cannot support an adverse credibility determination, especially as that speculation is contradicted by the evidence in the record. *Kaur v. Ashcroft*, 379 F.3d 876, 887 (9th Cir. 2004).

The IJ also found that Jiang had testified inconsistently about whether he used a Chinese or Korean passport to leave China and enter the United States. However, nothing in the record indicates that Jiang ever testified inconsistently about which passport he used to leave China and enter the United States. Jiang clearly and repeatedly stated that he left China using one Korean passport and then entered the United States using a different Korean passport, both of which were given to him by the Chinese gang. The IJ's finding of an inconsistency in this regard is not supported by substantial evidence.

Fourth, the IJ found that Jiang testified inconsistently about his knowledge of his mother's arrest. Jiang had said on his sworn asylum application that his mother and brother were arrested by Chinese police in August of 2007, while the IJ found that, on cross-examination, Jiang testified that he did not know whether his mother had ever been arrested. However, the IJ mischaracterized Jiang's testimony:

MS. STERN: Was your mother arrested at the same time as you?
MR. JIANG: No

4

JUDGE: Was she ever arrested?

MR. JIANG: *I don't know. Because I'm a public servant. Then, after Director Cui reported me to the police substation, they came after me to my work.*

JUDGE: How - why don't you know whether your mother was ever arrested?

MR. JIANG: When I was present, no. At that time, no.

MS. STERN: Sir, how could you not know if your mother was ever arrested?

MR. JIANG: Yes. She was. She was. Along with my brother - my older brother.

MS. STERN: Oh, really? When was that?

MR. JIANG: In '07.

In context, Jiang's "I don't know" answer was either non-responsive to the IJ's question or was an explanation for why he, a non-Christian, was arrested after the baptism party, while his mother, a Christian, was not. Were there any doubt on this score, when the Government followed up with a clarifying question, Jiang testified he knew that his mother had been arrested in 2007 along with his brother. This testimony is consistent with his asylum application.

Fifth, the IJ found an inconsistency between Jiang's statements that he had "no problems" leaving China and his testimony that the authorities had been to his house on December 7, looking to re-arrest him. However, the fact that police visited his home does not cast doubt on Jiang's testimony that he had "no problems" getting out of China. That the police were looking for him in Hunchun City when he was hiding with his uncle in Tumen City on December 7 is not inconsistent with his testimony that that he had no problems getting out of China

via Beijing on December 14.

Nor would the fact that Jiang was able to leave China while authorities were looking for him render his testimony incredible. We have said that "[a] petitioner's ability to escape h[is] persecutors does not undermine h[is] claim of a well-founded fear of persecution, even when [he] succeeds in obtaining government documents that permit h[im] to depart" *Mamouzian v. Ashcroft*, 390 F.3d 1129, 1137 (9th Cir. 2004). It is axiomatic that any applicant who successfully receives asylum in the United States must have escaped from his country. Thus, Jiang's testimony about the ease with which he left China is not inconsistent.

Sixth, the IJ concluded that Jiang was not credible because he did not admit on his I-589 form that he had used an alias on his Korean passport. However, this discrepancy does not go to the heart of his claim, which is predicated on the "viable nexus" between the alleged instances of persecution and Jiang's political opinions.

Because the six "inconsistencies" either (1) are not supported by substantial evidence, (2) do not go to the heart of Jiang's asylum claim, or (3) are not inconsistencies at all, the agency erred by concluding that, collectively, they deprived Jiang's testimony of the "ring of truth." Overall, "[t]he record lacks evidence upon which an adverse credibility determination can be made." *Ge v.*

6

*Ashcroft*, 367 F.3d 1121, 1125 (9th Cir. 2004). We therefore reject the adverse credibility determination and deem Jiang credible.

2.     As a result, the agency also erred by drawing a negative inference from Jiang's failure to produce corroborative testimony from his brother and daughter. "In a pre-REAL ID Act case, absent other substantial evidence of adverse credibility, the production of corroborating evidence cannot be required." *Lei Li v. Holder*, 629 F.3d 1154, 1160 (9th Cir. 2011). Where, as here, "credibility is the only issue on appeal, and once each of the IJ's reasons for finding adverse credibility is shown to be defective, this court accepts a petitioner's testimony as credible." *Id.* Thus, no corroborating evidence is required.

3.     Finally, the agency erred in finding Jiang's claim for withholding of removal forfeited. Although Jiang did not explicitly raise his withholding of removal claim in his BIA brief, he did argue that he had shown past persecution. The BIA should have been on notice that Jiang was seeking withholding, because past persecution is relevant to withholding and the IJ's reasons for denying withholding were substantially the same as for its denial of asylum. Because Jiang's brief sufficiently raised the grounds for past persecution, the IJ erred in holding he had forfeited this claim on appeal. However, Jiang did not meaningfully challenge the denial of his CAT claim, so he has forfeited it for the purposes of his appeal. *Singh v. Ashcroft*, 361 F.3d 1152, 1157 n.3 (9th Cir. 2004).

7

Neither the BIA nor the IJ addressed whether Jiang's testimony, if credible, would be sufficient to establish eligibility for the relief he requests. We therefore remand to the BIA to consider Jiang's asylum and withholding of removal claims. *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16–17 (2002) (per curiam).

**PETITION DENIED in part and GRANTED and REMANDED in part.**