**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LIN QUAN,
                                    *Petitioner,*

              v.

ALBERTO F. GONZALES,
                                    *Respondent.*

No. 03-70630

Agency No.
A75-684-401

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 6, 2005*
Pasadena, California

Filed November 7, 2005

Before: Diarmuid F. O'Scannlain and
Kim McLane Wardlaw, Circuit Judges, and
Robert H. Whaley,** United States District Judge.

Opinion by Judge Whaley;
Dissent by Judge O'Scannlain

---

*This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

## COUNSEL

Douglas G. Ingraham, Alhambra, California, for the petitioner.

Peter D. Keisler, Assistant Attorney General; John C. Cunningham, Senior Litigation Counsel; Norah Ascoli Schwarz, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., for the respondent.

## OPINION

WHALEY, District Judge:

Petitioner, Lin Quan, and her husband, Linsheng Li,[1] natives and citizens of China, petition for review of the Board of Immigration Appeals' ("BIA") decision affirming an immigration judge's denial of her application for asylum. We have jurisdiction under 8 U.S.C. § 1252. We review for substantial evidence. *Abebe v. Ashcroft*, 379 F.3d 755, 758 (9th Cir. 2004). We grant the petition for review, vacate and remand.

### I

Petitioner Quan's opening brief includes a request for independent relief for Linsheng Li. The brief contends that the appeals of Quan and her husband, Linsheng Li, have been

[1]The record is unclear as to whether Quan's husband's name is phonetically spelled Linsheng "Li" or Linsheng "Lin." We use "Li" because that is the spelling employed on Quan's asylum application.

consolidated. Under Fed. R. App. P. 3(b)(2), "[w]hen the parties have filed separate timely notices of appeal, the appeals may be joined or consolidated by the court of appeals." No such consolidation has occurred. Instead, the petition of *Linsheng Li v. Ashcroft*, Case No. 03-70631, was dismissed on November 26, 2003, for failure to file an opening brief pursuant to Ninth Circuit Rule 42-1. No motion was filed to reopen the appeal.[2] Accordingly, the cases of Lin Quan and Linsheng Li have not been consolidated for appeal, and only the petition of Lin Quan is properly before this court.

## II

The Respondent argues that the Court should refuse to consider the Petitioner's opening brief because it fails to cite to the 896-page administrative record, in violation of Fed. R. App. P. 28(a)(9)(A), which provides that the appellant's brief must include "citations to the authorities and parts of the record on which the appellant relies."

[1] We are sympathetic to the Respondent's argument. "[W]hen an appellant has approached our rules with such insouciance that we cannot overlook its heedlessness, we have not hesitated to strike an appellant's briefs and dismiss the appeal." *Dela Rosa v. Scottsdale Mem'l Health Sys., Inc.*, 136 F.3d 1241, 1243 n.1 (9th Cir. 1998) (citations and quotations omitted); *see also Mitchel v. General Elec. Co.*, 689 F.2d 877, 878 (9th Cir. 1982) (dismissing case where appellant failed to cite to excerpts of record).

[2] Because we have conducted our own independent review of the administrative record, we do not find it necessary to impose sanctions in this case. We do, however, admonish counsel of record that "attorneys should accept the

---

[2]The Petitioner refers to a "Motion for Relief from Dismissal for Failure to Prosecute and to Consolidate Petitions," but no such motion was ever filed. *Petr.'s Opening Br.* at 2.

responsibility of presenting an appeal of professional quality, which necessarily includes full compliance with the rules of court for the Ninth Circuit." *Dela Rosa*, 136 F.3d at 1244.

## III

**[3]** The IJ issued an adverse credibility finding, citing numerous bases, falling into roughly five categories: (1) the date Quan began practicing Christianity; (2) the date Quan told her husband she was practicing Christianity; (3) where Mr. Li resided during his father's illness; (4) Quan's arrest; and (5) her release on bond. The IJ's adverse credibility finding must be supported by "a legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief." *Guo v. Ashcroft*, 361 F.3d 1194, 1199 (9th Cir. 2004) (citations and quotations omitted).

**[4]** First, the IJ found that Quan's testimony about first "joining Christianity" in 1996 was not credible, because her husband testified that he told Quan about his Christian beliefs at the time of their marriage.[3] Because Mr. Li never testified that his wife began practicing Christianity prior to 1996 (at most, he stated she believed in Jesus Christ at an earlier date), there was no true inconsistency. While the testimony may have been unclear, "unclear testimony may not serve as substantial evidence for an adverse credibility finding when an applicant is not given the chance to attempt to clarify his or her testimony." *Guo*, 361 F.3d at 1200 (*citing He v. Ashcroft*, 328 F.3d 593, 602 (9th Cir. 2003)).

**[5]** Second, the IJ noted a discrepancy between Quan's account that she informed her husband of her home church

---

[3]We do not address the claim in the Respondent's brief that the Petitioner's father was imprisoned for 24 years for being Christian. This contention is unsupported by the record, and was not relied on by the IJ in making his credibility determination.

participation in early or late July 1996, and Mr. Li's testimony that he remembered learning of her participation at his father's funeral on August 25, 1996. Mr. Li stated that he did not notice his wife's participation at an earlier date because he was busy with work and was often away from home.[4] Even assuming that the IJ was correct in finding that there was a discrepancy regarding the timing of her participation in the home church, the discrepancy was only of one to one-and-a-half months. "[M]inor discrepancies in dates that . . . cannot be viewed as attempts by the applicant to enhance h[er] claims of persecution have no bearing on credibility." *Damaize-Job v. INS*, 787 F.2d 1332, 1337 (9th Cir. 1986); *see also Martinez-Sanchez v. INS*, 794 F.2d 1396, 1400 (9th Cir. 1986) (reversing adverse credibility determination based on "trivial errors" about date the petitioner joined a paramilitary group).

[6] Third, the IJ found that Quan's testimony was not credible because she testified that her husband was living at "her father-in-law's home" while Mr. Li testified that he was staying "at his brother's share at the hospital." The record, however, is devoid of any reference to Mr. Li staying "at his brother's share at the hospital," as noted by the IJ. Even if an inconsistency were deemed to exist, it did not go to the heart of the asylum claim. *See, e.g., Kebede v. Ashcroft*, 366 F.3d 808, 811 (9th Cir. 2004) (finding testimony regarding the petitioner's brother's place of residence was minor and based on witnesses' difficulties with English). There is no dispute that Mr. Li was not residing at his home during his father's illness, and this is the only issue marginally relevant to Quan's claim.

---

[4]The IJ's opinion does not weigh the significant fact that Quan's husband was in America from mid-April 1996 through June 1996, or the fact that from June 1996 through August 25, 1996, he did not live at home. The IJ's opinion merely states that "the fact that the respondent's husband was going back and forth to the United States during this time frame, does not diminish this implausible conduct." This conclusory statement does nothing to address the evidence.

**[7]** Fourth, the IJ found that Quan's testimony that her home was raided and she was arrested after participating in so few meetings was not plausible. The IJ explained that

> [i]n a country the size of China, for a person to be so unlucky to have just joined a small group of seven or eight according to her testimony, conduct four secret meetings in homes not always her home, and then be arrested is highly improbable and at a minimum implausible. Furthermore, the fact that she explained that the local committee was with the arresting officials does not diminish this implausibility.

We find that this conclusion was not supported by the record. Quan testified that she attended ten meetings, not four, and that of these meetings, five were held at her home. Moreover, the IJ's finding that due to the "size of China" Quan would not be found and arrested after five months of participation in a home church is speculation. An inference of a country's police capabilities cannot be drawn merely from its geographical size. *See Guo*, 361 F.3d at 1199 ("Conjecture and speculation can never replace substantial evidence as the basis for an adverse credibility finding.") (citations omitted). Further, the IJ's disregard of the presence of a member of the Neighborhood Committee, Ms. Jian, at Quan's arrest was not supported by coherent reasons. Quan's testimony that she personally knew Ms. Jian, that Ms. Jian was affiliated with the Chinese government, and that Ms. Jian knew where she lived, directly impacted the plausibility of her arrest. The IJ, however, did not provide a coherent reason for disregarding these facts. *See id.*

**[8]** Finally, the IJ focused on Quan's account of where her mother obtained the 3,000 RMB needed for her bail on October 27, 1996. Quan testified that her mother made the withdrawal from her savings bank on Sunday, October 27, 1996. The IJ found it implausible that banks in China would be open

seven days a week. There is no evidence in the record that Quan's mother's savings bank was not open on Sunday. For the IJ to come to this conclusion, he had to assume facts not in evidence. *See id.*[5]

[9] For the above reasons, we find that the IJ's adverse credibility finding was not supported by substantial evidence. Because we find that the IJ's adverse credibility finding is not supported by substantial evidence, we accept Quan's testimony as true for the purposes of the remaining analysis. *See Wang v. Ashcroft*, 341 F.3d 1015, 1023 (9th Cir. 2003).

IV

[10] The IJ found that Petitioner Quan failed to demonstrate that she was persecuted by Chinese authorities. To demonstrate eligibility for asylum, an applicant must establish "either past persecution or a well-founded fear of present persecution on account of [a protected ground]." *Mejia-Paiz v. INS*, 111 F.3d 720, 723 (9th Cir. 1997) (quotations omitted); 8 U.S.C. § 1101(a)(42)(A). We review the IJ's determination for substantial evidence. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481-84 (1992).

---

[5]Moreover, publicly available information indicates that banks in China are typically open on Sundays. *See* TravelChinaGuide.com, *http://www.travelchinaguide.com/essential/business-hour.htm* ("Hospitals, post offices, *banks*, monuments and museums are usually open seven days a week from 8:30 or 9:00 a.m. to 6:00 p.m.") (emphasis added); *see also id.*, *http://www.travelchinaguide.com/essential/tibet/money.htm* (stating that some branches of the Bank of China are open on Sundays).

In its footnote, the dissent entirely misses the point of the availability of the information obtained by these simple internet searches. In his oral decision, the IJ explicitly referred to Quan's "implausible testimony that the banks were open on Sunday." We do not use the search results to establish one way or the other whether Quan's mother's bank was open on that particular Sunday. Rather, this information merely underscores our position that any finding on the question of the bank's hours could only be based upon conjecture and speculation, impermissible bases under our controlling law. *See Guo*, 361 F.3d at 1199.

The IJ's factual findings overlook or significantly understate the treatment Quan endured. The IJ stated that the Chinese authorities "pulled [Quan's] hair" while she was in detention; however, Quan testified that her interrogator "pulled [her] head and kept shaking [her] head and push [her] head." Quan described her treatment as a "beat[ing]."

**[11]** The IJ also found that Quan's electrocution with a rod was not sufficient to present a case of persecution, because she did not report any resulting "medical attention or sustained injury." Using an electrically-charged baton on a prisoner, however, may constitute persecution, even when there are no long-term effects and the prisoner does not seek medical attention. *See Guo*, 361 F.3d at 1198 (officer used electrically-charged baton to subdue petitioner and held his arms and kicked his legs causing him to fall); *see Mihalev v. Ashcroft*, 388 F.3d 722, 730 (9th Cir. 2004) (reviewing the findings of *Guo* and noting that "[t]here is no suggestion in *Guo* that the petitioner was significantly injured as a result of being hit in the face seven or eight times and beaten with a plastic pole"). Moreover, the record demonstrated that Quan did suffer sustained injury from the electric shock. She testified that as a result of her treatment, she experienced a severe headache, was very dizzy, had blurry vision, was perspiring, and was barely conscious. She testified that upon returning home, she was paralyzed with fear, and suffered a severe headache and weakness.

**[12]** The IJ's opinion also omits discussion of Quan's testimony that she was fired from her job as a result of her religious association. *See Popova v. INS*, 273 F.3d 1251, 1258 (9th Cir. 2001) (finding that applicant was persecuted on account of religion where she was "threatened by police officers at [her place of employment], who said she would be fired if she did not change her [Christian] name").

**[13]** Accordingly, the record compels a finding that Petitioner Quan suffered past persecution.

V

**[14]** After finding that the Petitioner was not credible and did not experience past persecution, the IJ went on to find that the Petitioner did not have a well-founded fear of future persecution. To qualify for asylum based on the well-founded fear of future persecution, the applicant's fear "must be both subjectively [genuine] and objectively reasonable." *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003) (alteration in original) (quotations and citations omitted).

**[15]** Upon a finding of past persecution, the Petitioner is presumed to have a well-founded fear of future persecution on account of her religious beliefs. *Mamouzian v. Ashcroft*, 390 F.3d 1129, 1135 (9th Cir. 2004). The government may rebut this presumption by showing "by a preponderance of the evidence that country conditions have changed or that relocation is possible," thus putting into question the petitioner's well-founded fear. *Id.* Where the government has failed to argue, either in its submissions to the IJ or in its briefs before this panel, for the existence of changed country conditions, we need not remand to the IJ but, rather, may determine on our own that the presumption is not rebutted and, therefore, that the Petitioner is eligible for asylum. *Ndom v. Ashcroft*, 384 F.3d 743, 756 (9th Cir. 2004) (suggesting that, under such circumstances, it would be "exceptionally unfair" to give the government another opportunity to present such information); *Baballah v. Ashcroft*, 367 F.3d 1067, 1078 & n.11 (9th Cir. 2004) (same). We so hold.

The IJ did not apply the "past persecution" presumption but, instead, made independent findings that Petitioner failed to demonstrate a well-founded fear of future persecution. We review the IJ's decision on a substantial evidence standard. *Mamouzian*, 390 F.3d at 1135 (citing *Khup v. Ashcroft*, 376 F.3d 898, 904 (9th Cir. 2004)).

The IJ's opinion radically misconstrued the standard of "well-founded fear of future persecution." There is no

requirement that the Petitioner show that "every single" practicing Christian in her home country is persecuted as a matter of "pattern and practice." No applicant would be able to meet this standard. This court has held that a petitioner need only show a subjective fear of persecution that is objectively reasonable; and "even a ten percent chance of persecution may establish a well-founded fear." *Khup*, 376 F.3d at 904.

[16] "In general, an alien satisfies the subjective component of the well-founded fear test by testifying credibly about his fear of future persecution." *Mamouzian*, 390 F.3d at 1136. The Petitioner testified that, even after her departure from China, the police continued to monitor her communications with her father, and that she feared she would "be locked up and beaten" if forced to return. The IJ did not make any adverse credibility findings about the Petitioner's testimony on this issue. Indeed, the IJ found that "the co-respondent is a Christian and is attempting to pursue that religion in the United States." Therefore, her testimony regarding her fear of future persecution is sufficient to establish her claim on this ground.

Moreover, the record compels a finding that the Petitioner's fear of future persecution is objectively reasonable. As the IJ noted, the record demonstrates that there have been "crackdowns on Christians in China." The Government authorities who detained the Petitioner conditioned her release from prison on her ceasing all "anti-government" Christian religious association. If she chose to participate again in home church gatherings, she faced revocation of her bail, and future detention. Furthermore, the Petitioner testified that after she sent home Christian pamphlets, the Government searched her father's home and accused her of participating in "anti-revolution[ary] activities abroad" and attempting to "assist the foreign elements to stir up the agitation." Based on these accusations, the Petitioner faces an objectively reasonable possibility of future persecution should she return to China.

**[17]** Based on a full review of the record, we find that a reasonable fact-finder would be compelled to conclude that Quan has shown sufficient evidence of past persecution and a well-founded fear of future persecution. We do not address Quan's entitlement to withholding of removal or relief under the Convention Against Torture because Quan did not raise these issues in her brief to this court. *See Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996) (holding that issues not raised in the appeal brief are deemed abandoned).

**[18]** We grant the petition for review, vacate and remand so that the Attorney General may exercise his discretion as to whether to grant asylum relief. *See Sael v. Ashcroft*, 386 F.3d 922, 930 (9th Cir. 2004).

**PETITION FOR REVIEW GRANTED; VACATED AND REMANDED.**

O'SCANNLAIN, Circuit Judge, dissenting:

I respectfully submit that the court has substituted its independent analysis of the record for that of the Immigration Judge (the "IJ"), and, in so doing, has exceeded its authority and intruded upon the proper role of the fact finder. Because I conclude that the IJ's findings deserve greater deference than the majority accords them, I respectfully dissent from the decision to grant Lin Quan's petition.

I

Where the BIA has summarily affirmed the decision of an IJ, we review the IJ's decision as though it were the opinion of the BIA, *see Falcon Carriche v. Ashcroft*, 350 F.3d 845, 849 (9th Cir. 2003), and we must accept the IJ's finding of fact unless the evidence *compels* a contrary conclusion. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). This is

an extremely deferential standard of review: it is not enough that the evidence supports a contrary conclusion, that the panel would have weighed the evidence differently, *id.*, or even that the panel is persuaded that the finding is incorrect; the evidence must be so overwhelming that not just the panel in question but "*any reasonable adjudicator* would be *compelled* to conclude the contrary." 8 U.S.C. § 1252(b)(4)(B) (emphases added). The law and the Supreme Court are unequivocal on this point. *See id.*; *Elias-Zacarias*, 502 U.S. at 481 n.1 ("To reverse the BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it.").

A

The majority discusses some of the implausibilities and inconsistencies on which the IJ based his adverse credibility finding and purports to show how the implausibilities are conjectural and how the inconsistencies can be explained. On some points the majority is persuasive, but, given the extremely deferential standard of review that we must apply, enough evidence remains, in my view, to support the IJ's finding.

In particular, Quan's account of how her mother was able to obtain 3,000 RMB to procure her release from detention is accepted at face value by the majority despite contrary evidence in the record. Quan testified that her mother was able to withdraw the money from her savings bank on a Sunday, but Quan's husband repeatedly testified that such banks are closed on Sundays. It is not accurate, therefore, to say that "[i]n order for the IJ to come to [his] conclusion, he had to assume facts not in evidence," maj. op. at 15178.[1] The IJ

---

[1]Ironically, it is the majority's analysis which relies on facts not in evidence. The majority's reliance on a website of unknown reliability to establish that "banks in China are *typically* open on Sundays," maj. op. at 15178 (emphasis added), is a novel—and, I would respectfully suggest, misguided—application of the doctrine of judicial notice. *See* Fed. R.

explicitly found that the contradictory testimony of the husband—who had every reason to corroborate his wife's story and no reason to undermine it—cast substantial doubt on Quan's credibility. This sort of weighing of evidence is emphatically the prerogative of an IJ and the fact that the apparent inconsistency affects a key aspect of Quan's allegation of persecution should make it an unassailable basis for an adverse credibility finding.

Quan's testimony was also confused and incomplete with respect to the number and dates of the prayer meetings that she attended, and the timing of her confession of her belief in Jesus Christ to her husband. The majority attempts to downplay the significance of the latter point by labeling it as a minor discrepancy in dates. As the majority characterizes it, the one month difference between the date when Quan claims to have told her husband about her Christian practice and the date that her husband claims to have learned of it is of no import, but the IJ had good reason to view it otherwise. What concerned the IJ was the fact that, although Quan attributed her mother's recovery from illness to her new practice of Christianity, she appears to have withheld this information from her husband—who was sympathetic to Christianity— throughout the course of his own father's illness. The time between July and August, 1996, therefore, was not insignifi-

Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

More importantly, this "evidence" fails to undermine the IJ's adverse credibility determination. Even assuming these dubious sources establish the veracity of the petitioner's statement, the IJ relied on inconsistencies between the petitioner's testimony and her husband's in making a credibility determination — a fact independent of the bank's actual operating hours. The IJ needed to consider only the petitioner's testimony—not facts outside the record—to support this conclusion.

cant. That month marks an important change in circumstances: it is the difference between Quan informing her husband of her newfound faith in the healing power of Christian prayer while her husband's father was still alive and telling him at his father's funeral. In the case of a meaningful inconsistency such as this, it is the IJ's duty to consider the first-person testimony before him and to resolve the evidentiary confusion either for or against the petitioner. This the IJ did, and, because his conclusion is reasonably supported by evidence in the record—namely, the testimony of Quan's husband—we are not entitled to disturb it.

The majority's justifications of its own interpretations of this and other inconsistencies are reasonable, but so too is the IJ's scepticism, which should not be supplanted unless it is wholly conjectural or has no basis in the record. Because there is genuine confusion and inconsistency in the record on these points, and because the IJ's conclusions are supported by evidence in the record, it simply cannot be said that the evidence *compels* reversal. I would, therefore, affirm the IJ's adverse credibility finding and deny the petition.

## II

The IJ also found that a single detention, for less than one day, during which Quan had her hair pulled, was shaken, and was poked once with an electric prod in her shoulder/neck area did not rise to the level of persecution.

Given the inconsistent thresholds for finding persecution applied by different panels of this court, it is not surprising that the majority is able to cite a case in which we held that similar facts amounted to persecution. *See Guo v. Ashcroft*, 361 F.3d 1194 (9th Cir.). In that case, however, the petitioner was detained for a day and half (more than 50% longer than in this case), was struck twice in the face, kicked in the stomach, and ordered to do push-ups until he collapsed. By contrast, in other cases we have held that a single detention,

during which the petitioner was beaten, did not compel a finding of persecution because the petitioner did not require medical attention. *See, e.g.*, *Prasad v. INS*, 47 F.3d 336, 339 (9th Cir. 1995).

The majority argues that the lingering physical and mental symptoms about which Quan testified and the fact that she lost her job because the police visited her workplace support a finding of persecution. That may be so, but the fact that Quan did not testify that she required medical treatment, which was an important factor in our holding in *Prasad*, that she claims to have heard, second-hand, that she had lost her job but never bothered to confirm the report, and that, although her husband worked at the same company, nobody ever told him that she had been fired. On the basis of this evidence it was reasonable for the IJ to find that Quan had not been persecuted.

Because I do not believe that an IJ's decision should be overturned merely because the reviewing panel disagrees with it or can point to a plausibly analogous case from our abundant and inconsistent precedent, and because the evidence in this case does not *compel* a finding of persecution, I would affirm the IJ's decision and deny the petition.

### III

Finally, Quan and her counsel, Mr. Douglas Ingraham, are fortunate that this petition was not dismissed for failure to abide by Fed. R. App. P. 28(a)(9)(A), which requires a brief to contain "citations to the . . . part of the record on which the appellant relies." *See also* Ninth Circuit Rule No. 28-2.8. Given the limited resources of both the government and this court, it was irresponsible of Quan's counsel to shift the burden of sifting through almost 900 pages of administrative record onto the government and this court to find the facts on which Quan bases her argument. In *De la Rosa v. Scottsdale Memorial Health Systems, Inc.*, 136 F.3d 1241, 1243 (9th Cir.

1998), we "declare[d] that this habit of noncompliance must end" and we have, on at least two occasions, struck briefs and dismissed appeals for failure to comply with this basic requirement. *See Mitchel v. General Electric Company*, 689 F.2d 877, 878 (9th Cir. 1982); *N/S Corporation v. Liberty Mutual Insurance Company*, 127 F.3d 1145, 1146 (9th Cir. 1997).

The majority concedes the technical deficiencies of the brief and admits that it is "sympathetic to the Respondent's argument [that the brief be struck and the case dismissed]," maj. op. at 15174, but concludes that dismissal is not necessary "[b]ecause we have conducted our own independent review of the administrative record." *Id.* at 15174. With all due respect to the majority's commendable diligence, that is beside the point. Opposing counsel, or, as in this case, the court, will often be able to compensate for a party's shortcomings, but doing so involves a waste of limited time and resources. The rules governing the form and content of appellate briefs are not merely hortatory; they must be obeyed, and, when they are not, the consequences should be real. Mr. Ingraham should consider himself exceedingly fortunate that the only consequence of his inadequate performance in this case is a verbal admonishment. He should not expect to escape so lightly in the future.