FILED

DEC 07 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAMVEL HAYRAPETYAN and PAYTSAR MURADYAN, | No. 05-77155 |
| Petitioners, | Agency Nos. A079-517-742 |
| | A079-517-743 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 3, 2010
Pasadena, California

Before: NOONAN, CLIFTON and BYBEE, Circuit Judges.

Samvel Hayrapetyan (Hayrapetyan), a native and citizen of Armenia,

petitions for review of the decision of the Board of Immigration Appeals (BIA)

affirming the Immigration Judge's (IJ) denial of his applications for asylum,

withholding of removal, and protection under the Convention Against Torture

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

(CAT).  The IJ denied relief on the basis of an adverse credibility determination, and the BIA adopted and affirmed the decision of the IJ, citing *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994).  We therefore review the decisions of both the IJ and the BIA.  *See Samayoa-Martinez v. Holder*, 558 F.3d 897, 899 (9th Cir. 2009).  We evaluate the adverse credibility determination for substantial evidence, *Soto-Olarte v. Holder*, 555 F.3d 1089, 1091 (9th Cir. 2009), and apply pre-REAL ID Act standards because Hayrapetyan's asylum application was filed prior to the Act's effective date, *see Sinha v. Holder*, 564 F.3d 1015, 1021 n.3 (9th Cir. 2009).  Concluding that substantial evidence does not support the IJ's adverse credibility determination, we grant the petition and remand for further proceedings.

The IJ relied on inconsistencies in the record pertaining to the two times that Hayrapetyan received medical treatment after being beaten by the Yerkrapah.  The letter from the hospital where Hayrapetyan first sought treatment was addressed to Hayrapetyan, not to his brother-in-law, who had obtained the letter after Hayrapetyan had left Armenia.  This discrepancy was explained by Hayrapetyan's testimony that it is standard practice in Armenia to address such a document to its subject.  The letter also indicated that Hayrapetyan was advised to seek follow-up care from specialists at his place of residence.  Hayrapetyan testified that his mother was told at the hospital that he should travel to the capital city of Yerevan

2

for follow-up treatment. As an explanation for the tension between the advice documented in the letter and the oral advice that he was given, Hayrapetyan testified that the specialist care he was advised to seek was not available where he lived.

The second time that Hayrapetyan received medical care, he did not go to the hospital. Instead, as Hayrapetyan stated in both his written declaration and his oral testimony, he received care locally, at a relative's house. Although his written declaration stated that he was "treated by the private doctor," Hayrapetyan explained during his oral testimony that a doctor was consulted, but there were no private doctors in his town. Hayrapetyan stated that he was treated by relatives at home because he was too afraid to go to the hospital for actual treatment by the doctor.

For each of the purported inconsistencies regarding Hayrapetyan's medical care, Hayrapetyan offered reasonable explanations. The IJ erred by failing to consider these plausible explanations, and for this reason these inconsistencies do not support adverse credibility. *See Soto-Olarte*, 555 F.3d at 1091. Moreover, these discrepancies pertain to minor details that are too insignificant to constitute substantial evidence. *See Singh v. Ashcroft*, 362 F.3d 1164, 1171 (9th Cir. 2004); *Garrovillas v. INS*, 156 F.3d 1010, 1014 (9th Cir. 1998) (holding that

3

"inconsistencies of less than substantial importance for which a plausible explanation is offered" cannot serve as the basis for an adverse credibility finding).

Other inconsistencies identified by the IJ cannot support the adverse credibility determination because Hayrapetyan was given no opportunity to explain the perceived contradiction. *See Don v. Gonzales*, 476 F.3d 738, 741 (9th Cir. 2007) ("[T]he IJ must provide a petitioner with a reasonable opportunity to offer an explanation of any perceived inconsistencies that form the basis of a denial of asylum.") (internal quotations omitted). In particular, Hayrapetyan was never given a chance to clarify or explain his testimony regarding the injuries to his kidneys.

Hayrapetyan was also not given an opportunity to explain his error in naming the presidential candidate of the ANM party. Moreover, this testimony does not go to the heart of Hayrapetyan's claim for asylum, which is based on whistleblowing. *See Grava v. INS*, 205 F.3d 1177, 1181 (9th Cir. 2000) (holding that whistleblowing against government corruption can constitute political activity for the purpose of asylum); *see also Li v. Holder*, 559 F.3d 1096, 1102 (9th Cir. 2009) (holding that the reason underlying an adverse credibility determination "must go to the heart of the asylum claim.").

4

The IJ also identified an inconsistency in the number of beatings described in Hayrapetyan's written declaration and his oral testimony. This alleged inconsistency is not supported by the record. According to the IJ, Hayrapetyan's declaration stated that he was beaten at the party meeting, and Hayrapetyan's failure to mention this beating during his oral testimony amounted to an omission. However, the declaration is ambiguous as to whether a beating actually occurred at the party meeting. The declaration states only: "I demanded to check the informations and take legal actions toward criminals and the Chief of the Customs Department. I was reprimanded by the members of the party, they demanded from me to give them the document. I refused and as a result I was beaten." These sentences, riddled with grammatical errors as they are, can fairly be read to mean that, generally as a result of his speech, Hayrapetyan suffered abuse. *See Quan v. Gonzales*, 428 F.3d 883, 886 (9th Cir. 2005) (vacating adverse credibility finding where "there was no true inconsistency" in the record).

Finally, both the IJ and BIA put weight on the death certificate submitted by Hayrapetyan as proof of his son's death. The government proved the certificate to be fraudulent. Hayrapetyan testified that he had received the death certificate by mail from his brother-in-law who was still in Armenia, and that he did not know its true source. The BIA found that Hayrapetyan testimony's about the document's

source was unclear, but the BIA cited only to Hayrapetyan's testimony at the first hearing and failed to take into account the full explanation that Hayrapetyan provided at the subsequent hearing.

Hayrapetyan's testimony at the first hearing reflected his confusion as to whether the death certificate sent by his brother-in-law was the original that he had received after his son's death or a copy. At his second hearing, Hayrapetyan testified that on the same day of his first hearing, after he had learned that the death certificate was fraudulent, he called his brother-in-law to find out how it was obtained. Hayrapetyan's brother-in-law said that he had gone to a regional office to obtain the document, meaning that the document was not the original that Hayrapetyan had received while he was still in Armenia. Considering the record as a whole, there is not substantial evidence to support the conclusion that Hayrapetyan was the source of, or played a role in obtaining, the fraudulent document. Where there is no evidence that the petitioner knew that the document was fraudulent, such document cannot, by itself, support the adverse credibility determination. *Yeimane-Berhe v. Ashcroft*, 393 F.3d 907, 911 (9th Cir. 2004).

Because none of the above grounds constitutes substantial evidence of adverse credibility, we grant the petition, vacate the IJ's credibility finding, and remand to the agency. Despite the inadequacy of the IJ's reasons, "we cannot say

6

that no doubts have been raised" about Hayrapetyan's credibility on the record before us. *Hartooni v. INS*, 21 F.3d 336, 343 (9th Cir. 1994) (internal quotations omitted). We therefore remand to the agency to reassess Hayrapetyan's credibility in the first instance and determine his eligibility—if it finds him credible—for asylum, withholding of removal, and CAT protection. *See Garrovillas v. INS*, 156 F.3d 1010, 1017 (9th Cir. 1998).

**GRANTED and REMANDED.**

BYBEE, Circuit Judge, dissenting:

Because the IJ's adverse credibility determination was supported by substantial evidence, I respectfully dissent.

Hayrapetyan testified he was persecuted by the Armenian government—and by forces associated with it—after reporting official corruption he witnessed while working for the Customs Department. Specifically, Hayrapetyan testified that, among other things, his house was set on fire by the Yerkrapah—a military organization—and that his seven-year-old son died in the fire. To prove his son's death, Hayrapetyan submitted a death certificate that Respondent proved to be counterfeit. This counterfeit death certificate creates an inconsistency in Hayrapetyan's testimony that goes to the heart of his asylum claim: if Hayrapetyan's son is not dead, then the Yerkrapah may not have set Hayrapetyan's house on fire as Hayrapetyan claimed. In other words, the counterfeit death certificate calls into question whether Hayrapetyan was persecuted at all.

I am not unsympathetic to Petitioner's claim. If Hayrapetyan's testimony is true, then he suffered horrific persecution at the hands of the Armenian government and the Yerkrapah. However, when considering the counterfeit death certificate submitted by Hayrapetyan to prove his son's death along with the other inconsistencies in Hayrapetyan's testimony, I cannot conclude Petitioner presented

evidence "so compelling that no reasonable factfinder could find . . . he was not credible." *Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003) (internal quotation omitted).  I would deny the petition.