**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JIATAI LIN,<br><br>   Petitioner,<br><br>v.<br><br>ERIC H. HOLDER, Jr., Attorney General,<br><br>   Respondent. | No. 11-73006<br><br>Agency No. A098-448-360<br><br>MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 18, 2013**
San Francisco, California

Before: HAWKINS, THOMAS, and McKEOWN, Circuit Judges.

   Jiatai Lin petitions for review of the decision of the Board of Immigration

Appeals ("BIA") affirming the order of the Immigration Judge ("IJ"), who denied

Lin's applications for asylum, withholding of removal, and protection under the

Convention Against Torture ("CAT"). Because the parties are familiar with the

---

   \*   This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

   \*\*   The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

history of the case, we need not recount it here. We have jurisdiction pursuant to 8 U.S.C. § 1252(a), and we grant the petition and remand to the BIA for further proceedings.

I

Substantial evidence does not support the IJ's adverse credibility determination.[1] Each of the fifteen grounds the IJ identified as bases for her adverse credibility finding suffers from one or more of the following defects: (1) there is, in fact, no inconsistency in the record; (2) Lin did not have an opportunity to explain the perceived inconsistency; (3) the IJ ignored any explanation Lin gave for the perceived inconsistency; or (4) the cited inconsistency does not go to the heart of Lin's claim.[2]

---

[1] Where the BIA issues its own decision but relies in part on the IJ's reasoning, we review both decisions. *Flores-Lopez v. Holder*, 685 F.3d 857, 861 (9th Cir. 2012). "We must uphold the IJ's adverse credibility determination so long as one of the identified grounds is supported by substantial evidence and goes to the heart of the alien's claim of persecution." *Rizk v. Holder*, 629 F.3d 1083, 1087 (9th Cir. 2011) (citation, internal quotation marks, and brackets omitted). To reverse the BIA's determination, the evidence must compel the conclusion that Lin was credible. *Chebchoub v. INS*, 257 F.3d 1038, 1042 (9th Cir. 2011).

[2] Because Lin filed his application for asylum before May 11, 2005, the REAL ID Act's standards governing review of the agency's adverse credibility determinations do not apply. REAL ID Act of 2005, Pub. L. No. 109–13, Div. B., Title I, § 101(h)(2), 119 Stat. 231, 305; *Rizk*, 629 F.3d at 1087 n.2.

A.    Perceived Inconsistencies Between Lin's Statements and His Documentary
      Evidence

According to the IJ, Lin admitted on cross-examination that he changed the dates on two of the three fine collection receipts. However, there is no indication that the dates were changed, and Lin never admitted to changing the dates. Lin only admitted to darkening the numbers because the receipts were crumpled after he carried them from China and he was worried the dates were no longer visible. Although the IJ acknowledged Lin's reasonable explanation for darkening the dates, neither the IJ nor the BIA offered any reason for rejecting it. Therefore, the darkened dates cannot support the IJ's adverse credibility finding. *Rizk*, 629 F.3d at 1088 ("If the alien offers a 'reasonable and plausible explanation' for the apparent discrepancy, the IJ must provide a specific and cogent reason for rejecting it." (quoting *Soto-Olarte v. Holder*, 555 F.3d 1089, 1091–92 (9th Cir. 2009)).

The IJ and the BIA also concluded that Lin's testimony contradicted statements on the fine collection receipts that Lin was fined in 1997 and 1998 for "early child bearing and having more children [than the] family planning [policy] stipulated." Lin testified that under China's family planning laws as applied to the rural area where he lived, he and his wife were permitted to have their second child in 1997 because their first child was a girl and had been born more than five years

earlier.  Although Lin's testimony seems inconsistent with the fine collection receipts, no one ever asked Lin about the apparent discrepancy during direct examination, cross examination, or at any other time.  Therefore, the purported inconsistency cannot support the IJ's adverse credibility finding.  *Rizk*, 629 F.3d at 1088.

The IJ perceived an inconsistency between Lin's claim that he paid his fines in Longtian Town and the fine collection receipts, which bear the seal of the Jin Mei Village Neighborhood Committee.  However, the receipts corroborate, rather than undermine, Lin's testimony because each receipt also bears the seal of Longtian Town.  Lin's inability to explain why the receipts contain the seal of the Jin Mei Village Neighborhood Committee in addition to the seal of Longtian Town is of no consequence because there is no inconsistency.  *See Quan v. Gonzales*, 428 F.3d 883, 886 (9th Cir. 2005) (finding an IJ's adverse credibility determination unsupported by substantial evidence where "there was no true inconsistency").  To the extent there is a discrepancy, it is minor and does not go to the heart of Lin's claim.  *See Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 660 (9th Cir. 2003) ("Minor inconsistencies in the record that do not relate to the basis of an applicant's alleged fear of persecution, go to the heart of the asylum claim, or

reveal anything about an asylum applicant's fear for his safety are insufficient to support an adverse credibility finding.").

Similarly, the IJ found that Lin's claim that his fine collection receipts were filled out by an individual named Ai King was inconsistent with the receipts themselves, which list "ZaiYun Lin" as the cashier. Again, there is no true inconsistency because Lin testified that there were two other people present when the receipt was filled out—one person who accepted his money and another who signed for the transaction. The presence of ZaiYun Lin's name on the receipts is not inconsistent with Lin's testimony, and therefore cannot form the basis of an adverse credibility determination. *See Quan*, 428 F.3d at 886.

The IJ also noted a discrepancy in Lin's permanent resident registration certificate, which lists Lin as head of the family and states that a household member moved to Longtian Town from Liao Ning Province in 1951. In response to questions about this discrepancy, Lin testified that neither he nor his parents ever moved from Liao Ning Province. Although this appears to be an inconsistency that Lin was given an opportunity to explain, it is minor and does not go to the heart of Lin's claim. Therefore, the purported inconsistency cannot form the basis of the IJ's adverse credibility determination. *Mendoza Manimbao*, 329 F.3d at 660.

B.      Perceived Implausibility of Lin's Claims

The IJ found it implausible that Lin threatened family planning officials with a knife because she found that his account of the event lacked detail. However, neither the IJ nor the BIA elaborated on how Lin's testimony lacked detail. More importantly, Lin's written declaration *was* detailed. He wrote that he used a kitchen knife; that he stood in front of the entrance to his house; that he cried out to the officials that whoever tried to force his wife into sterilization would face a "desperate fight" against him; that several officials arrived and sprayed him with a substance that burned his eyes and blinded him; and that the officials handcuffed his hands behind him and took him to the public security bureau. Therefore, the IJ erred in faulting Lin for not providing more details. *Zheng v. Ashcroft*, 397 F.3d 1139, 1147 (9th Cir. 2004). This is especially true given that no one gave Lin notice that he should provide further details. *Akinmade v. INS*, 196 F.3d 951, 957 (9th Cir. 1999).

The IJ also found Lin's story implausible because he testified that, despite their ordeal, his wife has never been sterilized. However, Lin explained that the government officials agreed not to sterilize his wife because he promised to pay them a hefty fine. The IJ ignored Lin's explanation, so this perceived

-6-

inconsistency is insufficient to support the adverse credibility finding. *Rizk*, 629 F.3d at 1088.

Similarly, the IJ found Lin's story implausible because his wife still lives in the same area and because Lin himself was never convicted for threatening the officials. However, the IJ's conclusion is based on her speculation that Lin's wife would have (or could have) moved and that Lin would have been prosecuted for his actions. The IJ's "[s]peculation and conjecture cannot form the basis of an adverse credibility finding." *Shah v. INS*, 220 F.3d 1062, 1071 (9th Cir. 2000).

C.    Perceived Inconsistencies Between Lin's Statements and His Written Declaration

The IJ faulted Lin's written declaration for not including the years along with the months of his wife's allegedly forced abortions. The failure to include the years appears to have been the result of translation difficulties, which the asylum officer remedied by writing in the years by hand. In any event, the initial omission is minor and therefore insufficient to support an adverse credibility determination. *Mendoza Manimbao*, 329 F.3d at 660.

The IJ also noted an inconsistency between Lin's written declaration and his testimony. Lin's written declaration stated that "[o]ne day, somebody from the government came and tried to force *us* to take a sterilization operation." (Emphasis

added.)  By contrast, Lin never testified that anyone tried to sterilize *him*; he only testified that the government officials came to sterilize his wife.  Upon careful examination, there appears to be no inconsistency.  Lin's written declaration only referred to the "sterilization operation" in the singular, implying that the officials came to take both him and his wife so that only one of them (his wife) could be sterilized.  Even assuming that there is an inconsistency, Lin was never afforded an opportunity to reconcile the two statements, so the purported inconsistency cannot support the IJ's adverse credibility finding.  *Rizk*, 629 F.3d at 1088.

D.     Perceived Inconsistencies Between Lin's Statements and the State Department's Report

The IJ doubted Lin's claim that he was assessed fines of 200,000 yuan because the average fines reported in the State Department's Profile of Asylum Claims are much lower.  *See* Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, China: Profile of Asylum Claims and Country Conditions ("Profile") 27 (May 2007).  However, the Profile also reported "wide variation in the amount of social compensation fees, and the severity of the hardship they impose, for out-of-plan births" in Fujian Province, where Lin and his wife lived.  *Id.*  Indeed, for households, like Lin's, that had incomes significantly higher than the net per capita income levels for their area, the local birth planning commission

could increase fines for out-of-plan births. *Id.* Given this "wide variation," Lin's testimony was not necessarily inconsistent with the Profile. Even if it was inconsistent, Lin was never afforded an opportunity to reconcile his testimony with the report, so any inconsistency cannot support the IJ's adverse credibility finding. *Rizk*, 629 F.3d at 1088.

Similarly, the IJ found it "simply not believable" that the detention center would refuse to accept the 406,000 yuan that Lin claims he raised from selling his motorcycle, house, and business. The IJ's conclusion is based on speculation that the detention center officials would be willing to accept less than the 600,000 yuan fine Lin promised to pay them in return for them not sterilizing his wife. "Speculation and conjecture cannot form the basis of an adverse credibility finding." *Shah*, 220 F.3d at 1071.

The IJ perceived another inconsistency between Lin's testimony and the State Department's Profile. According to the IJ, Lin denied knowing anyone in China who has three or four children, even though the Profile clearly refers to families with that many children. The IJ misapprehended Lin's testimony. Lin did not testify that there are no families in China with three or four children; indeed, he *agreed* with the statement that in some rural areas, there are families with that many children. Rather, Lin only testified that there were no such families in *his*

*area* of China.  There is no inconsistency, and in any event, Lin was never asked to explain the perceived inconsistency.  Therefore, any discrepancy here cannot support the IJ's adverse credibility determination.  *Rizk*, 629 F.3d at 1088; *Quan*, 428 F.3d at 886.

Finally, the IJ found that the Profile undercut Lin's testimony that his wife was forced to undergo an abortion in January 2004.  The IJ relied on the Profile's report that, according to the Fujian Provincial Birth Planning Committee, there have been no forced abortions or sterilizations since the 1990s.  But in doing so, the IJ cherry-picked one sentence from the Profile and ignored adjacent sentences. A thorough reading of the Profile reveals that it *supports* Lin's claims:

> According to the Fujian Province Birth Planning Committee (FPBPC), there have been no cases of forced abortion or sterilization in Fujian in the last 10 years. *It is impossible to confirm this claim, and, in 2006, reportedly, there were forced sterilizations in Fujian.* Hundreds of asylum applicants from Fujian claim that forced abortions and sterilizations continue to the present day.

Profile at 26 (emphasis added).  The report continues by noting that a former Fujian Province birth planning official testified before Congress that her office was performing forced abortions and sterilizations as late as 1998.  *Id.*  There is no inconsistency, and even if there was, Lin had no opportunity to reconcile his

-10-

testimony with the Profile. This purported discrepancy cannot support the IJ's adverse credibility determination. *Rizk*, 629 F.3d at 1088; *Quan*, 428 F.3d at 886.

II

Given that substantial evidence does not support the agency's adverse credibility finding, the agency cannot require Lin to produce corroborating evidence if Lin is deemed credible. *Joseph v. Holder*, 600 F.3d 1235, 1246 (9th Cir. 2010). However, where we conclude that the agency's adverse credibility determination is not supported by substantial evidence because the petitioner was not asked about inconsistencies, or because the IJ did not address the petitioner's explanation of perceived inconsistencies, we do not automatically deem the petitioner credible. *Soto-Olarte*, 555 F.3d at 1095-96. Therefore, we remand "to give the agency the opportunity to evaluate [Lin's] credibility while allowing him to explain as-yet-unexplained inconsistencies . . . and while considering the explanations that he has already provided." *Id* at 1096. Because the BIA has not evaluated Lin's eligibility for asylum and withholding of removal independently from the IJ's adverse credibility determination, we also remand for the agency to make those determinations in the first instance, if necessary. *Id.*; *INS v. Ventura*, 537 U.S. 12 (2002) (per curiam). Because Lin has not challenged the BIA's

finding that he is not eligible for protection under CAT, we do not remand for the agency to reevaluate his CAT claim. *Soto-Olarte*, 555 F.3d at 1096.

**PETITION GRANTED; REMANDED.**