**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| MUMIN ABASS,<br><br>                    Petitioner,<br><br>v.<br><br>JEFFERSON B. SESSIONS III, Attorney General,<br><br>                    Respondent. | No.    16-74045<br><br>Agency No. A208-302-495<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 9, 2018
San Francisco, California

Before:  D.W. NELSON, KLEINFELD, and W. FLETCHER, Circuit Judges.

Mumin Abass, a native and citizen of Ghana, petitions for review of the

Board of Immigration Appeals' ("BIA") denial of his application for asylum,

withholding of removal, and relief under the Convention Against Torture ("CAT").

We have jurisdiction under 8 U.S.C. § 1252.  We review for substantial evidence

---

        [*]        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

the agency's factual findings. *Singh v. Holder*, 753 F.3d 826, 830 (9th Cir. 2014) (citations omitted). We reverse the BIA's finding of ineligibility for relief only if the evidence "compels" the reversal. *Zi Zhi Tang v. Gonzales*, 489 F.3d 987, 990 (9th Cir. 2007). We grant the petition for review and remand.

## I.    Asylum

The BIA's only basis for denying Abass's asylum application was that Abass had not met his burden to show that the Ghanian government is "unable or unwilling to protect him from anti-gay violence or harm." In its answering brief, the government does not argue that Abass did not suffer past persecution; rather, the government only asks us to remand because, in light of our decision in *Bringas-Rodriguez*, 850 F.3d 1051 (9th Cir. 2017) (en banc), the agency should have another opportunity to elicit testimony from Abass about whether he reported his attack to the police, and if not, why not.

Our "unable and unwilling" standard was already established at the time both the IJ and BIA rendered their decisions. Prior to *Bringas-Rodriguez*, we articulated several ways the government's inability and unwillingness to control persecution could be proven. *See, e.g., Rahimzadeh v. Holder*, 613 F.3d 916, 921 (9th Cir. 2010) ("demonstrating that a country's laws or customs effectively deprive the petitioner of any meaningful recourse to governmental protection"); *Id.*

at 922 (citing *Avetova-Elisseva v. INS,* 213 F.3d 1192, 1198 (9th Cir. 2000)) ("establishing that private persecution of a particular sort is widespread and well-known but not controlled by the government"); *id.* (quoting *Ornelas-Chavez v. Gonzalez*, 458 F.3d 1052, 1058 (9th Cir. 2006) ("convincingly establish[ing] that [reporting] would have been futile or [would] have subjected [the applicant] to further abuse"). We have also maintained that "reporting persecution to government authorities is not essential to demonstrating that the government is unable or unwilling to protect [a petitioner] from private actors." *Afriyie v. Holder*, 613 F.3d 924, 931 (9th Cir. 2010).

Even under these already established standards, the BIA disregarded and mischaracterized substantial evidence demonstrating that Ghanian officials are unwilling to protect LGBT individuals. The record shows that police often partake in extortions targeting gay persons and are reluctant to investigate claims of homophobic attacks. When police do intervene in mob attacks of gay persons, they, at times, arrest the victims. Most importantly, consensual intercourse between two men is illegal in Ghana, and revealing homosexual identity to the police can subject that individual to potential arrest and prosecution. Therefore, "[Ghana's] laws [and] customs effectively deprive [Abass] of any meaningful recourse" and thus reporting his persecution would be "futile." *Rahimzadeh*, 613

3

F.3d at 922. Given the overwhelming evidence compels the conclusion the Ghanian government is unwilling to protect LGBT individuals, it is unnecessary for Abass to provide additional testimony on this point.

### a. Well-Founded Fear Of Future Persecution

Upon a finding of past persecution, Abass is presumed to have a well-founded fear of future persecution on account of his sexual orientation. *Mamouzian v. Ashcroft*, 390 F.3d 1129, 1135 (9th Cir. 2004). The government may rebut the presumption of a well-founded fear by showing that country conditions have changed in Ghana or that Abass may be able to relocate somewhere else in the country to avoid future persecution. *See* 8 C.F.R. § 208.13(b)(1).

"Where the government has failed to argue, either in its submissions to the IJ or in its briefs before this panel, for the existence of changed country conditions, we need not remand to the IJ but, rather, may determine on our own that the presumption is not rebutted and, therefore, that the Petitioner is eligible for asylum." *Quan v. Gonzalez*, 428 F.3d 883, 889 (9th Cir. 2005); *see also Baballah v. Ashcroft*, 367 F.3d 1067, 1078 & n.11 (9th Cir. 2004) (holding that because INS failed to rebut presumption of a well-founded fear, petitioner was statutorily eligible for asylum); *Ndom v. Ashcroft*, 384 F.3d 743, 756 (9th Cir.

4

2004), *superseded by statute on unrelated grounds* (holding that a remand for asylum eligibility is not necessary when government failed to present evidence of changed country conditions).

Here, the government did not present any evidence, either before the IJ or this panel, that country conditions have changed, nor did it argue that Abass may be able to relocate. Thus, we may determine whether the presumption is rebutted and if Abass is eligible for asylum. *See Quan*, 428 F.3d at 889.

"In general, an alien satisfies the subjective component of the well-founded fear test by testifying credibly about his fear of future persecution." *Id.* at 890 (citation and internal quotations omitted). Abass testified that he is afraid of his father and the community because they will kill him for being gay. "The IJ did not make any adverse credibility findings about [Abass's] testimony." *Id.* Thus, "[Abass's] testimony regarding [his] fear of future persecution is sufficient to establish [his] claim on this ground." *Id.*; *see Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001) ("[E]ven a ten percent chance of persecution may establish a well-founded fear.").

Abass's fear is also "objectively reasonable." *Quan*, 428 F.3d at 890. The record reflects pervasively homophobic attitudes that often manifest in violence towards gay individuals and these attitudes show no signs of change. There is also

nothing to suggest that certain areas of Ghana are more hospitable to gay individuals or that the police in certain parts of Ghana do not partake in extortion of gay persons. The U.K. Border Agency report states that while relocation may be possible, "there are . . . likely to be difficulties in finding safety through internal relocation given that homophobic attitudes are prevalent across the country." Moreover, all declarations Abass provided state that he will be killed now that people know that he is gay. Thus, we hold that Abass is statutorily eligible for asylum and "remand so that the Attorney General may exercise his discretion as to whether to grant [asylum] relief." *Sael v. Ashcroft*, 386 F.3d 922, 930 (9th Cir. 2004).

## II.    Withholding of Removal

Under the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), "[t]o qualify for withholding of removal, an alien must demonstrate that it is more likely than not that he would be subject to persecution on one of the specified grounds." *Khup v. Ashcroft*, 376 F.3d 898, 905 (9th Cir. 2004) (citation and internal quotations omitted).

A rebuttable presumption that Abass would suffer future persecution if he were returned to Ghana is equally applicable to his claim for withholding of removal. 8 C.F.R. § 1208.16(b)(1); *see Mutuku v. Holder*, 600 F.3d 1210, 1213

6

(9th Cir. 2010); *Mousa v. Mukasey*, 530 F.3d 1025, 1030 (9th Cir. 2008).  For all the reasons that support Abass's well-founded fear of future persecution and "[b]ecause the [government] has failed to rebut this presumption," any reasonable trier of fact would be compelled to conclude that it is "more likely than not that [Abass] would be subject to persecution upon returning to [Ghana]." *Baballah*, 367 F.3d at 1079 (citation and internal quotations omitted).  Thus, in addition to remanding to the Attorney General to exercise discretion regarding asylum, we also remand for an appropriate order withholding removal of Abass.  *See id.*

### III.  CAT Relief

The BIA denied Abass's CAT claim for two reasons: (1) The BIA found that Abass did not demonstrate that Ghanian officials acquiesced in his past torture or would acquiesce in any future torture; and (2) the BIA concluded that Abass could safely relocate to another part of Ghana.

Abass is entitled to relief under CAT if he establishes that he would more likely than not" be tortured in Ghana.  8 C.F.R. § 1208.16(c)(2).  Torture constitutes "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as . . . punishing him . . . for an act he . . . has committed . . . or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the

7

consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

### a. Government Acquiescence In Torture

Public officials acquiesce in torture if they: "(1) have awareness of the activity (or consciously close their eyes to the fact it is going on); and (2) breach their legal responsibility to intervene to prevent the activity because they are unable or unwilling to oppose it." *Barajas-Romero v. Lynch*, 846 F.3d 351, 363 (9th Cir. 2017) (quoting *Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014)). Contrary to the government's argument, *Barajas-Romero* did not articulate a new standard for acquiescence and quoted directly from *Garcia-Milian*. We therefore decline to remand for consideration of *Barajas-Romero*.

In *Bromfield v. Mukasey*, we held that "the record compel[led] the conclusion that the Jamaican government not only acquiesces in the torture of gay men, but is directly involved in such torture," based on a law, like Ghana's, that "criminalizes homosexual conduct." 543 F.3d 1071, 1079 (9th Cir. 2008). A law that criminalizes homosexual conduct "is an indicator of the government's position toward gay men, as is the fact that the police generally do not investigate complaints of human rights abuses suffered by gay men." *Id.*

Not only does Ghana have a law that criminalizes homosexual conduct, other evidence in the record points to Ghanian officials' acquiescence to torture of LGBT persons. Various political leaders call for rounding up LGBT persons, and even call for them to be lynched. The U.S. Human Rights Report likewise states that "the attitude of the police toward LGBT persons" was a factor "preventing victims from reporting incidents of abuse." The record also contains multiple examples of police extortion of gay men. Thus, like in *Bromfield*, we find that the record compels the factual finding that the government acquiesces to torture of LGBT persons.

### b. Four CAT Factors

In assessing whether future torture is more likely than not, the factors to be considered are: (1) "[e]vidence of past torture"; (2) the ability of the applicant to relocate; (3) "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal"; and (4) "[o]ther relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3)(i)-(iv).

Any reasonable trier of fact would be compelled to conclude that Abass would more likely than not be subject to torture if removed to Ghana based on all four factors. First, as the BIA found, Abass suffered past torture. *See* 8 C.F.R. § 1208.16(c)(3)(i). Abass's past torture is the primary factor we permissibly rely on

when deciding whether he would more likely than not suffer future torture in Ghana. *See Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1080 (9th Cir. 2015) (quoting *Nuru v. Gonzales*, 404 F.3d 1207, 1217–18 (9th Cir. 2005)).

Second, the BIA's finding that Abass would be able to safely relocate was not supported by substantial evidence and the BIA erroneously only considered this factor in the four-factor analysis. Abass's testimony supports that he was in hiding for a month before fleeing Ghana and that relocation is difficult because of pervasive homophobic attitudes throughout the country. Abass provided two declarations stating that he would be killed upon returning to Ghana, and one of them even stated that his lover had already been killed. Further, we have established that CAT cannot be denied on the basis of a petitioner being expected to conceal his or her identity or beliefs. *Edu v. Holder*, 624 F.3d 1137, 1146 (9th Cir. 2010); *see also Karouni v. Gonzales*, 399 F.3d 1163, 1173 (9th Cir. 2005) (holding that asylum applicants cannot be asked to conceal their sexual orientation and there is no "appreciable difference between . . . being persecuted for being a homosexual and being persecuted for engaging in homosexual acts"). The BIA also did not consider "whether relocation would be safe and reasonable," *Afriyie*, 613 F.3d at 937–38, even though "it will rarely be safe to remove a potential torture victim on the assumption that torture will be averted simply by relocating

10

him to another part of the country." *Nuru*, 404 F.3d at 1219. As discussed in Section I(a), the U.K. Border Agency Report states that relocation in Ghana is difficult because homophobic attitudes are so pervasive. In short, nothing in the record supports the BIA's conclusion that Abass would be able to safely relocate. And since "no one [CAT] factor is determinative," Maldonado v. Lynch, 786 F.3d 1155, 1164 (9th Cir. 2015) (en banc), the BIA erred in ending its inquiry there.

Third, Ghana is rife with "gross, flagrant or mass violations of human rights." 8 C.F.R. § 1208.16(c)(3)(iii). The newspaper articles in the record are filled with violent acts towards gay individuals. One article described a gang of youth that murdered a man they believed to be gay and were still continuing to look for his lover. Another described an attack on a lesbian marriage ceremony where every person thought to be lesbian was stripped naked and "chased out of town with sticks and whips." The U.S. State Department also describes a gang assault on "nine people they believed to be LGBT individuals in Jamestown, a neighborhood of Accra, forcing them from their homes and attacking them with canes and sticks." The head of Ghanaian Commission on Human Rights and Administrative Justice stated that the organization "would not fight for gay rights because homosexuality is illegal." Finally, Amnesty International reported that "[h]uman rights abuses against individuals suspected of same-sex relations

11

continue, as well as unlawful killings and excessive use of force by police and security officers."

Fourth, Abass has provided "[o]ther relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3)(iv). The Education Ministry vowed "to severely punish any student caught engaging in homosexual or lesbianism activities." Another article described the police arresting a person "for recruiting other men into homosexuality." Amnesty International has also condemned public officials for publicly endorsing lynching gay people.

No further fact-finding is required to support Abass's CAT claim because the record already compels the conclusion that he is entitled to CAT relief. "In light of [Abass's] past torture, and unrebutted country conditions evidence showing that such violence continues to plague [LGBT persons] in [Ghana], no questions remain–-[he] was tortured and there is a substantial danger that [he] will be, if returned." *Avendano-Hernandez*, 800 F.3d at 1082.

The government does not offer any arguments on the merits of Abass's CAT claim and therefore waived any challenge. *See Martinez v. Sessions*, 873 F.3d 665, 660 (9th Cir. 2017). Because "the BIA has already fully considered [Abass's] CAT claim" and CAT relief is nondiscretionary, we only "remand for the agency

to grant" withholding of removal under CAT. *Avendano-Hernandez,* 800 F.3d at 1082 (citation and internal quotations omitted); *Haile v. Holder*, 658 F.3d 1122, 1133 (9th Cir. 2011) ("Because the evidence Haile presents compels but one conclusion and is unrebutted, there is no reason to remand in this case–-we hold that Haile is entitled to deferral of removal under the CAT."); 8 C.F.R. § 1208.16(c)(4) (stating that when none of the statutory bars apply, "alien entitled to [CAT] protection shall be granted withholding of removal").

IV.    **Conclusion**

In sum, we grant the petition for review as to Abass's asylum, withholding of removal, and CAT claims. We hold that Abass is statutorily eligible for asylum and remand so the Attorney General may exercise discretion in granting asylum. We also hold that Abass is entitled to withholding of removal under IIRIRA. And because we hold that "[Abass] has met his CAT burden . . . he is entitled to mandatory withholding of removal on the basis of his claim under the Convention." *Nuru*, 404 F.3d at 1230.

**PETITION FOR REVIEW GRANTED; REMANDED FOR FURTHER PROCEEDINGS IN CONFORMITY WITH THIS MEMORANDUM.**

13